DANIEL A. HOROWITZ   SBN 92400
P.O. Box 1547
Lafayette, CA 94549
(925) 283-1863
Email: bdega@earthlink.net

CARMELA CARAMAGNO   SBN 139279
P.O. Box 1811
Lafayette, CA 94549
(925) 299-1904
Email: caramagnolaw@comcast.net

Attorney for plaintiff
WADE DERBY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WADE DERBY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURG; PITTSBURG POLICE DEPARTMENT; BRIAN ADDINGTON and DOES 1-10, inclusive,<br><br>Defendants.<br>_____/ | **No.**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1. VIOLATION OF CIVIL RIGHTS BASED ON FIRST AMENDMENT SPEECH (42 U.S.C. Section 1983);**<br><br>**2. RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE § 1102.5;**<br><br>**3. RETALIATION IN VIOLATION OF GOVT. CODE § 12940,** *et seq.*<br><br>**JURY TRIAL REQUESTED** |

Plaintiff WADE DERBY ("PLAINTIFF") brings these causes of action against Defendants CITY OF PITTSBURG (hereinafter "CITY"), a city duly

organized and existing under the laws of the State of California, PITTSBURG POLICE DEPARTMENT (hereinafter "DEPARTMENT"), a division of defendant CITY, the individually named defendants and Does 1-10, inclusive based on the following allegations:

## PARTIES, VENUE AND JURISDICTION

1. Plaintiff WADE DERBY, (hereinafter "DERBY") is a resident of Contra Costa County. Plaintiff WADE DERBY was, at all relevant times, an employee of defendant DEPARTMENT, a division of defendant CITY, except during those times of acts occurring after plaintiff's coerced "retirement" from defendant DEPARTMENT in January 2016.

2. Plaintiff is informed and believes and thereon alleges that defendants, except defendant CITY and defendant DEPARTMENT, are natural persons, who were, at all relevant times, employees of defendant DEPARTMENT.

3. Plaintiff is informed and believes that defendants CITY and DEPARTMENT, are governmental entities, with their principal place of businesses located in Pittsburg, California, County of Contra Costa.

4. Plaintiff is informed and believes and thereon alleges that defendants DOES 1 through 10, inclusive, are fictitious names of defendants whose true names and capacities are at this time unknown to plaintiff. Plaintiff is informed and believes and thereon alleges that each defendant so designated was the officer, director, shareholder, employer, employee, agent and/or other representative of named defendants, and that each defendant so designated is responsible in whole or in part for the damages suffered by plaintiff.

5. Plaintiff is informed and believes and thereon alleges that defendants and each of them, were acting as the agent, servant, or employee of each other and were acting within the scope of their respective employment, with the full knowledge and consent, either express or implied, of each of the other named defendants.

5

2

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

6. At all times stated herein, defendants knew or reasonably should have known that their actions and/or failure to act would violate plaintiff's constitutional rights, his freedom from retaliation for the exercise of those rights, and violate his civil rights.

7. This Court is a Court of original subject matter jurisdiction as to all civil actions arising under the Constitution, laws or treaties of the United States. Plaintiff's claims under 42 U.S.C.A. § 1983 arise under the Constitution and laws of the United States, and thus this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (1) and (2), in that defendants CITY and DEPARTMENT have offices and agents in, and does business in Pittsburg, California, and thus resides in this District, and the acts giving rise to this claim occurred in this District.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9. On March 21, 2016, Plaintiff filed a timely claim for Damages with defendant CITY and has complied with any and all applicable governmental claims statutes for those claims governed by a claims statute. A true and correct copy of plaintiff DERBY's Governmental Claim filed on March 21, 2016, is attached hereto as Exhibit "A-1". A true and correct copy of his "Attachment" to claim detailing a systematic and continuous course of harassment and retaliation up to and including the date of his coerced "retirement" is attached as Exhibit "A-2".

10. A true and correct copy of defendants denial of the claim as untimely, dated April 22, 2016, is attached as Exhibit "B". A true and correct copy of Plaintiff's request for reconsideration of that denial is attached as Exhibit "C".

11. On May 2, 2016, plaintiff DERBY filed a Employment "Right To Sue" form with the California Department of Fair Employment and Housing. A true and correct copy of plaintiff's "Right To Sue" form is attached as Exhibit

3

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

"D".

12. On May 18, 2016, plaintiff DERBY received three letters from the Department of Fair Employment & Housing, including a "Notice of Filing Complaint," a "Notice of Case Closure and Right To Sue" letter, and a "Notice to Complainant's Attorney" from the Department of Fair Employment & Housing. True and correct copies of the three May 18, 2016 letters are attached as Exhibits "E-1 to E-3"

13. Plaintiff has exhausted all available administrative remedies in an attempt to resolve the matters described in this Complaint.

## INTRODUCTION

14. Plaintiff had a distinguished career with defendant PPD spanned almost three decades. For approximately seven years prior to his being forced to resign in January 2016, plaintiff was the lead investigator tasked with conducting defendant Department's "professional standards," or internal affairs ("IA's") investigations. Plaintiff also conducted professional standards investigations for defendant City on other City employees.

15. In January of 2009, plaintiff was accused of sexual harassment by a female staff member, Antonia Baldazo, who worked for plaintiff. The complaint was never formally investigated, this denying plaintiff the opportunity to defend himself. Plaintiff demanded a professional standards investigation of the matter, but defendant DEPARTMENT, headed by Chief Aaron Baker (hereinafter "BAKER"), who was close with Baldazo, refused to conduct an investigation.

16. In March of 2012, Cassandra Wilkerson made a claim of sexual harassment against plaintiff. She ultimately filed suit for the alleged harassment against defendants CITY and DEPARTMENT. Plaintiff was named as a defendant in that lawsuit, but Wilkerson's claims against plaintiff were ultimately dismissed on summary judgment.

17. In October of 2012, plaintiff was coerced into signing, at the threat of

4

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

an undeserved adverse employment action such as termination or demotion, an agreement to resign four years hence in January of 2016. A true and correct copy of that agreement is attached as Exhibit "F".

18. During the negotiation of the resignation, plaintiff was advised by defendant Addington that if plaintiff continued to work at defendant Department, plaintiff would have the opportunity to renegotiate the resignation depending on the outcome of the Wilkerson allegations.

19. Based on defendant Addington's representations, plaintiff continued to work for defendants up until January of 2016, and forewent seeking lateral employment as a deputy in other law enforcement agencies until defendant ADDINGTON informed plaintiff in approximately November-December of 2015 that he was cutting off negotiations.

20. As January 2016 approached, defendant DEPARTMENT did in fact negotiate with plaintiff to continue in his employment. Attached as Exhibit "G" is a true and correct copy of a proposed "First Amendment to the Settlement Agreement And Release" prepared by defendant CITY. However, defendants ceased negotiations and retaliated against plaintiff because of plaintiff's whistleblowing activities, including plaintiff's exposing misconduct by defendants about defendant's handling of *Pitchess* motions and crime statistical reporting known "Suspicious Circumstance" reports. Defendant's discrimination against and retaliation against plaintiff injured plaintiff substantially as set forth below.

**PLAINTIFF DERBY'S DISTINGUISHED EMPLOYMENT HISTORY**

21. Plaintiff started at the PPD in 1988 as a patrol officer.

22. Six months later, plaintiff was appointed to the SWAT (Special Weapons And Tactics) team.

23. In 1989, plaintiff was appointed to a street level drug enforcement team called CAT (Crime Abatement Team).

24. In 1990, plaintiff was promoted to detective. Plaintiff's first

assignment as a detective was to the narcotics division. In 1992, plaintiff was laterally promoted to the State Narcotics Officer's task force "ECCNET".

25. In 1994, plaintiff was promoted to Corporal. Plaintiff served as a Corporal for two years.

26. In 1996, plaintiff was promoted to Sergeant. This was the year that plaintiff began being assigned as the investigating officer to internal affairs investigations.

27. In 2003, plaintiff was promoted to Lieutenant. In 2006, plaintiff became the first officer in the PPD to graduate from command college. That same year, plaintiff completed a Master's degree in Leadership from St. Mary's College in Moraga. Plaintiff was also the first officer at the PPD to graduate from the Police Executive Research Forum (PERF) Leadership Program.

28. By 2009, plaintiff was the prime investigator for defendant Department and City in their professional standards investigations. He continued in this duties until his forced retirement in 2016. During the period of continued employment following the October 2012 signing, plaintiff's rank and status with defendant DEPARTMENT did not change, and plaintiff continued to be the officer in charge of conducting the highly sensitive personnel investigations. In fact, on December 9, 2015, defendant ADDINGTON provided plaintiff with a glowing letter of recommendation regarding his value as a law enforcement employee. A true and correct copy of that letter is attached as Exhibit "H".

29. It was as a result of his work on the professional standards, or "IA" investigations, that plaintiff learned that defendants were misleading the Courts regarding information sought by litigants in relation to *Pitchess* motions being filed with the Superior Court. Plaintiff's insistence that the Court's be truthfully informed that lead to plaintiff being retaliated against by being forced from his position at defendant DEPARTMENT.

# FIRST SIGNS OF CORRUPTION AT THE PITTSBURG POLICE DEPARTMENT

30. Plaintiff testified in front of a grand jury regarding corruption at the PPD in approximately 1991 by Chief Castiglione and other members of his command staff. Plaintiff was called as a witness who could testify credibly to act of corruption occurring in defendant DEPARTMENT.

31. Plaintiff was under BAKER's, then a lieutenant with defendant DEPARTMENT, command at the time of testifying at the grand jury regarding Chief Castiglione. Catiglinoe's command staff, in which BAKER was a part, were under scrutiny because of incidents of alleged corruption in defendant DEPARTMENT. Plaintiff revealed information damaging to the entire command staff. Chief Castiglione ultimately left the office as chief of police.

32. Plaintiff went before a grand jury again in approximately 2002-2003 about his commanding officer, Commander Hendrick's, orders to plaintiff to falsely alter the facts in a police report and Plaintiff's refusal to do so. Plaintiff also testified about the original report having been removed by Commander Hendrick's from law enforcement records division.

33. Subsequent to plaintiff's testimony, Commander Henricks resigned. His resignation followed sexual harassment allegations lodged against him. A claim against Commander Hendricks was settled by the City and Hendricks was allowed to keep his position.

34. Plaintiff spoke out again against another chief, Chief Casey, this time about how defendant DEPARTMENT was reporting crime statistics. Plaintiff complained that the manner in which defendant DEPARTMENT was reporting crimes was unethical because defendant DEPARTMENT was taking reportable felony offenses and reporting them as information reports in a manner that understated crime reporting in defendant CITY. These reports, known as the Uniform Crime Report ("UCR") would ultimately be sent to other crime fighting

7

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

organizations such as the Federal Bureau of Investigations (hereinafter "FBI"), who in turn reported that data as fact.

35. In December of 2008, plaintiff attended a staff meeting hosted by now Chief BAKER, and at that meeting, plaintiff spoke openly and freely about defendant DEPARTMENT dishonestly reporting crime statistics through the use of "informational reports" instead of felony crime reports.

## RETALIATION AGAINST DERBY BEGINS

36. Prior to speaking out publicly against defendant DEPARTMENT's unethical and misleading crime reporting, plaintiff was in line to become Chief of police according to statements made by Chief BAKER. After speaking out at the staff meeting, Baldazo, who was close with Chief BAKER, lodged her sexual harassment claim against plaintiff. Defendant DEPARTMENT refused to formally investigate, thus depriving plaintiff of any due process, and precluding plaintiff from clearing his name and any taint of wrongdoing.

## DERBY'S REFUSAL TO BE DISHONEST IN COURT PROCEEDINGS

**(Retaliation For First Amendment Exercise of Speech Relating To Defendant's Misleading The Courts During *Pitchess* Hearings)**

37. During the period from 2003-2015, plaintiff was assigned and tasked with conducting internal affairs (hereinafter "IA") investigations of fellow Pittsburg police officers as part of his administrative duties. Beginning in 2013 until the time of his release on January 8, 2016, plaintiff was specifically assigned by defendant ADDINGTON, plaintiff's superior officer, to conduct almost all professional standards investigations within the organization. During the 2013-2016 time period, plaintiff conducted approximately forty internal affairs investigations.

38. In 2014, plaintiff was assigned to conduct internal affairs investigations on officers Ingram and Sibbitt. Plaintiff was assigned to this IA up

8

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

through the period of his termination on January 8, 2016. By June of 2014, plaintiff had conducted substantial work on the IA, including interviews of potential witnesses. Based on plaintiff's early findings during the course of the investigation, a parallel criminal investigation was launched by defendant Department on or about May of 2014.

39. In June of 2014, plaintiff requested permission to conduct the interviews of Ingram and Sibbitt and requested permission to finalize the IA. Finalizing the IA would include documenting all aspects of the investigation formally in writing. This internal affairs report would customarily be maintained in defendant Addington's office where the internal affairs files were maintained. These IA files, and the finalized report, would then be part of the officers personnel record which would be produced in camera pursuant to relevant *Pitchess* motions.

40. In making this request, plaintiff was following established custom and practice relating to an IA investigation. Plaintiff made multiple requests to complete the interviews of Sibbitt and Ingram, to finalize his report, and/or be allowed to write a summary of his findings, including a summary of his interviews of officers Sibbitt and Ingram.

41. In June 2014, plaintiff met with employees of defendant CITY and defendant DEPARTMENT. At these meetings, plaintiff again requested permission to document his findings on the Ingram and Sibbitt IA for court *Pitchess* compliance purposes. Plaintiff was repeatedly ordered by defendant ADDINGTON not to complete the finalized written IA report.

42. Plaintiff's requests to document the IA findings were denied during relevant time periods of court hearings on *Pitchess* motions. Plaintiff is informed and believes that the existence of this ongoing internal affairs investigation and the evidence obtained in the process were not disclosed at *Pitchess* hearings occurring between May 14, 2014 and October 16, 2015.

9

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

43. Prior to the first *Pitchess* hearing in May of 2014, plaintiff met with defendant ADDINGTON and Cpt. Raman regarding the upcoming *Pitchess* hearing. Present at this meeting was Joyce Lowe, the Custodian of Records. Plaintiff was ordered to attend the *Pitchess* hearing. At this meeting, plaintiff was ordered by defendant ADDINGTON not to take his IA files to the court, except for one document showing that officer Ingram had been placed on administrative leave.

44. Plaintiff requested permission to take the entire IA file to the Court and to show the City Attorney the entire IA file as was custom and practice, and to comply with the law. Plaintiff put everyone in that meeting on notice that he fully intended to comply with the law and that if he was called to testify *in camera* he would disclose to the Court any factual data the Court deemed necessary. Plaintiff requested permission to conduct those interviews and finalize the IA.

45. Subsequent to that meeting, and prior to the first *Pitchess* hearing, plaintiff complained both to the Custodian of Records, Joyce Lowe and to defendant CITY's Attorneys about the proposed limited *Pitchess* disclosure ordered by defendant ADDINGTON.

46. In May 2014, at the time of the first scheduled *Pitchess* hearing, plaintiff met with attorneys for defendant CITY and again complained about defendant ADDINGTON's order for limited disclosure. Plaintiff informed defendant CITY's attorney of the contents of his IA investigation and file. Plaintiff informed the attorney that he would not willfully withhold any information during this legal process as he was ordered to by defendant ADDINGTON.

47. The *Pitchess* hearing did not occur that afternoon, but instead was continued to a later date. That afternoon, after the hearing had been continued, plaintiff again informed custodian Lowe that he would not withhold information ordered to be disclosed by the Court.

48. Plaintiff was expecting to appear at the rescheduled *Pitchess* hearing,

but instead, the hearing was attended by employees of defendant CITY as the hearing had been put off to a date when plaintiff was known to be out on vacation.

49. Plaintiff learned upon his return from vacation by employees of defendant CITY that his investigation and the contents of his IA file were not disclosed at the *Pitchess* hearing which occurred without him being present.

50. Concerned about this irregularity, plaintiff communicated with defendant ADDINGTON, this time by way of memorandum, requesting permission to draft a summary of his IA which would be available to the Court on review of a *Pitchess* motion. A true and correct copy of plaintiff's memorandum to defendant ADDINGTON (erroneously dated September 26, 2016) is attached as Exhibit "I".) Plaintiff was again ordered by defendant ADDINGTON not to draft such a summary.

51. On or about March 3, 2015, plaintiff learned that once again the Contra Costa County courts had been mis-informed regarding the existence and contents of the Ingram/Sibbitt IA investigation. Plaintiff again advised employees of defendant PITTSBURG of the need to disclose such information. The incident was described by defendants as a mistake.

52. Plaintiff asked defendant ADDINGTON for permission to appear in Court to correct the record and inform the court of the IA investigation and contents. Defendant ADDINGTON refused to give plaintiff permission to take the requested action.

53. In or around March 15, 2015, defendant ADDINGTON told plaintiff to consider the IA of officers Ingram and Sibbitt closed. Defendants then caused the IA number which had been assigned to the case deleted as having been "issued in error."

54. On or about October 6, 2015, plaintiff appeared in Court and advised the court of the fact that IA information and files had previously been kept from it.

55. Following his appearance in court on October 6, 2015, plaintiff

11

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

received a letter from defendant ADDINGTON insisting that defendants had complied with their *Brady* obligations at the *People v. Easter Pitchess* hearing, and insisting that defendant PITTSBURG and its employees were are aware of *Pitchess* requirements and procedures. Attached as Exhibit "J" is a true and correct letter dated October 6, 2015 plaintiff received from defendant ADDINGTON trying to justify to plaintiff why the IA information had not been disclosed to the courts.

56. Thereafter, on October 19, 2015, plaintiff received a letter from defendant ADDINGTON informing him that defendants were cutting off negotiations for plaintiff's continued employment with defendant DEPARTMENT and insisting that his previously stipulated resignation would be enforced. A true and correct copy of defendant ADDINGTON's October 19, 2016 letter to plaintiff is attached as Exhibit "K".)

57. Defendants and each of them, owed plaintiff a duty not to penalize plaintiff for exercising his First Amendment rights to notify defendants and their employees regarding *Brady* violations occurring at *Pitchess* hearings, and to inform the Courts of such violations.

58. Defendants arbitrary and penalized plaintiff, cut off negotiations, and insisted on his resignation in violation of plaintiff's fundamental right to speak out against improper and unethical conduct and to notify defendants CITY and DEPARTMENT, their employees and the Courts of such actions.

59. These wrongs were done under color of state and local law and authority.

### RETALIATION AGAINST DERBY CONTINUES

60. Defendants also retaliated and caused plaintiff to be terminated from and denied other employment opportunities by falsely reporting in his personnel file that plaintiff's reason for separation was dismissal instead of retirement. Attached as Exhibit "L" is a true and correct copy of the January 15, 2016

12

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

12

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

Personnel Action Form plaintiff received stating plaintiff had been dismissed from defendant DEPARTMENT.  Defendants were aware that plaintiff was employed by that time as a contract employee with Stanislaus County and was seeking a position as a Stanislaus deputy sheriff.

61.	As an additional act of retaliation against plaintiff, defendants failed to purge plaintiff's IA file of the prior alleged sexual harassment allegations, in violation of defendant DEPARTMENT's established custom and practice, and wilfully failed to and refused to purge these dated allegations despite agreement to do otherwise.

62.	Defendants knew and understood the adverse consequences of a personnel file designation of dismissal versus retirement on plaintiff's ability to maintain and obtain employment in the law enforcement field.  Defendants wrongful designation of the cause of plaintiff's separation from their employment caused plaintiff to be terminated from his teaching position at Stanislaus County Sheriff's office and also caused plaintiff to be removed from the background process to be a Stanislaus deputy sheriff.

## FIRST COUNT
## VIOLATION OF CIVIL RIGHTS
### (42 U.S.C. § 1983 against defendants CITY and DEPARTMENT)

63.	Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1 through 62.

64.	The above-alleged conduct by Defendants was unwelcomed, directed towards Plaintiff, and was part of an ongoing and continuing pattern of driving out Plaintiff as an officer and employee of defendant DEPARTMENT.

65.	The above-alleged conduct was orchestrated by members of defendant DEPARTMENT and CITY, public entities and state actors.

66.	The First Amendment provides, in part, that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. I. This prohibition

13

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

was made applicable to the States and their political subdivisions by virtue of the Fourteenth Amendment. U.S. Const. Amend. XIV.

67. Plaintiff engaged in speech and conduct protected under the First Amendment of the U.S. Constitution by speaking out against misleading the Courts and public on *Pitchess* motions and "Suspicious Circumstance" reporting. Plaintiff, a public employee, consistently raised his mismanagement concerns internally in his capacity as a public employee pursuant to his official duties, and was repeatedly ignored and undermined by Defendants.

68. Faced with the moral dilemma of observing first hand improper governmental conduct by Defendant in one of the largest school districts in the United States and at the taxpayer's expense, Plaintiff had no choice but to communicate his concerns in his private capacity to a news reporter.

69. Plaintiffs concerns about corruption involving the DEPARTMENT and CITY, public entities financed by the State of California, is a matter of public concern that affects all citizens. This public concern clearly outweighs any legitimate interest of the DEPARTMENT or CITY to ensure their corruption goes unnoticed by the public.

70. By virtue of the conduct set forth herein, Defendants individually and in their managerial capacity on behalf of Defendant DEPARTMENT made a determination to retaliate against the Plaintiff by refusing to renew his employment contract based on Plaintiffs exercise of protected speech. Plaintiff was subjected to acts of retaliation as described throughout the Complaint herein. By these acts, Defendants have deprived Plaintiff of substantive due process rights secured by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

71. Plaintiffs objections to the gross mismanagement of Defendants and communication to staff, and ultimately news reporting, was a clear motivating factor in defendant's decision to not renew his employment agreement, as

14

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

Plaintiff's contract was not modified despite plaintiff's having won the Wilkerson court case against him.

72. At all times stated herein, defendants knew or reasonably should have known that their actions and/or failure to act would violate plaintiff's first amendment rights, his procedural, substantive, and due process rights, plaintiff's right to be free from retaliation for the exercise of those rights, and would impair plaintiff's right to future employment.

73. As a further direct and proximate result of the violation of Plaintiffs civil rights, Plaintiff has and will continue to suffer severe mental anguish and emotional distress in the form of anger, anxiety, embarrassment, humiliation, damage to his professional reputation, and other incidental expenses; suffer loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in an amount according to proof at trial.

74. The conduct of defendants and each of them was "arbitrary, or conscience shocking, in a constitutional sense." *Collins v. City of Harker Heights*, Texas, 503 U.S. 115, 128 (1992).

75. Defendant acted with malice, oppression and fraud, with the wrongful intention of hurting Plaintiff, for an improper and evil motive amounting to malice, and in conscious disregard of Plaintiffs rights.   Plaintiff is therefore entitled to recover punitive damages in an amount according to proof at trial.

76. As a result of defendants' retaliatory and discriminatory conduct, Plaintiff has been compelled to retain legal counsel, and is entitled to reasonable attorneys' fees and costs of suit, pursuant to 42 USC§ 1983, and 42 USC §1988.

## SECOND COUNT
## RETALIATION
### (Labor Code §1102.5 against all Defendants)

77. Plaintiff hereby re-alleges and incorporates by reference Paragraph 1

15

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

through 76, inclusive, as though fully set forth herein.

78. At all times mentioned herein, California Labor Code §1102.5 was in effect, and binding on Defendants. California Labor Code §1102.5 provides that an employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

79. California Labor Code § 1102.5 further provides that an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

80. Plaintiff, as stated throughout this Complaint, repeatedly communicated improper government activities pursuant to his duties as a Sergeant internally to Defendants. When Plaintiffs disclosures were ignored by Defendant ADDINGTON, Plaintiff reported this conduct to defendant CITY, other employees, and ultimately to the Contra Costa County Superior Court. Plaintiff has engaged in protected activities under Labor Code §1102.5 by reporting these events.

81. As a direct and proximate result of engaging in the aforementioned protected activities, the reporting of corruption and refusal to engage in unlawful activity as alleged herein, WADE DERBY has been subjected to a hostile work environment, a continuous and ongoing course of adverse employment actions, including, but not limited to, being wrongfully harassed and coerced into taking an unwanted "retirement," and having his separation from employment falsely listed as dismissal rather than retirement.

82. Plaintiff suffered an adverse employment action in retaliation for his

16

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

objections when Plaintiff's employment contract was not modified, and he was forced into retirement, and his separation from defendant DEPARTMENT was falsely listed as dismissal rather than retirement.  Such actions are unlawful, and retaliatory in violation of Labor Code § 1102 .5, have resulted in damage and injury to Plaintiff, and plaintiff is entitled to all available categories of damages.

83.   By reason of the conduct of Defendants and their directors, executives, officers, employees and agents, Plaintiff has necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

84.   In light of Defendants' willful, knowing, and intentional conduct against Plaintiff, Plaintiff seeks an award of punitive and exemplary damages.

85.   The amount of the Plaintiffs' damages are not yet completely known, but exceed the minimum jurisdiction of this court and will be amended at the time of trial according to proof.

## THIRD COUNT
## RETALIATION
### (California Government Code §12940 et seq.
### against defendants CITY and DEPARTMENT

86.   Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 85, inclusive, of this Complaint as though set forth in full.

87.   At all times mentioned herein, California Government Code §12940 was in effect, and binding on Defendant. California Government Code §53298, subd. (a) provides that it is unlawful, unless based on a bona fide occupational qualification, "for an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or

employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

88. Further, pursuant to California Government Code §12940, subd. (h), it is unlawful "for any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

89. Plaintiff repeatedly communicated both verbally and in writing to his superiors his concerns about gross mismanagement, unlawful and unethical conduct in relation to Defendant's handling of the "Suspicious Circumstances" cases, as well as its handling of the *Pitchess* hearings.

90. Defendant ADDINGTON ultimately sent plaintiff written communication indicating his and defendant DEPARTMENT's refusal to further negotiate plaintiff's continued employment.

91. Defendant's actions violate California Government Code §12940 as reprisal to Plaintiff's whistleblowing activities entitling plaintiff to all available categories of damages.

## CLAIM FOR PUNITIVE DAMAGES

92. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 91, inclusive, of this Complaint as though set forth in full.

93. As a direct, foreseeable and proximate result of Defendants' conduct, Plaintiff has lost income, promotional and career opportunities, and has suffered other economic losses in an amount to be determined at time of trial.

94. As a direct, foreseeable and proximate result of Defendants' outrageous conduct as alleged herein, Plaintiff has suffered great anxiety,

18

WADE DERBY v. CITY OF PITTSBURG, et al. COMPLAINT

embarrassment, anger, loss of enjoyment of life, injury to reputation, and severe emotional distress in an amount to be determined at time of trial.

95. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring plaintiff, and acted with an improper and evil motive amounting to malice or despicable conduct. Alternatively, Defendant's wrongful conduct was carried out with a conscious disregard of Plaintiffs rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with each defendant's wrongful acts and sufficient to punish and deter future similarly reprehensible conduct.

96. Plaintiff is entitled to recover prevailing party attorney's fees pursuant to the provision of the California Labor Code and by other statutory entitlements.

WHEREFORE, plaintiff prays for judgment against Defendants, and each of them, as follows:

1. General and specific damages in an amount according to proof;
2. Attorney's fees and costs; and
3. Such other relief as the Court may deem just and proper.
4. Injunctive relief in the form of an order that the Defendants reinstate plaintiff under the terms and conditions set forth herein.
5. Punitive damages as allowed under law.
6. Such other and further orders that this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in this action of all claims asserted against all Defendants as permitted by law.

Dated: September 26, 2016

_____
DANIEL A. HOROWITZ, attorney for Plaintiff WADE DERBY