UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WADE DERBY,

         Plaintiff,

    v.

CITY OF PITTSBURG, *et al.*,

         Defendants.

Case No. 16-cv-05469-SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Re: Dkt. No. 20

On February 17, 2017, the Court held a hearing on defendants' motion to dismiss plaintiff's first amended complaint. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendants' motion, and GRANTS leave to amend. If plaintiff wishes to amend the complaint, plaintiff must do so by **March 9, 2017**.

**BACKGROUND**

This lawsuit arises out of plaintiff Wade Derby's employment with the City of Pittsburg ("the City"). The following is taken from the First Amended Complaint ("FAC"). Derby was hired by the City as a police officer with the Pittsburg Police Department ("PPD") in 1998. FAC (Dkt. No. 11) ¶ 14. He was employed by the City for twenty-eight years in various roles. *See id.* ¶¶ 14-21. By 2009, Derby was the lead investigator in charge of the PPD's professional standards, or internal affairs ("IA") investigations. *Id.* ¶¶ 21, 32, 53. He continued in this role until his separation from the City in January 2016. *Id.* ¶¶ 21, 53.

In March 2012, a female coworker accused Derby of sexually harassing her and filed both an internal complaint and civil lawsuit against him. *Id.* ¶ 35. Derby was granted summary judgment in the civil lawsuit. *Id.; see also* Dkt. No. 10-1, Ex. K> However, the allegations of the

internal complaint were sustained after an IA investigation conducted by now-Chief of Police Brian Addington.  FAC ¶ 34.  In October 2012, plaintiff executed a Settlement Agreement and Release with the City, where he tendered an "irrevocable resignation," effective January 8, 2016, in exchange for the City's agreement to not terminate or demote plaintiff.  *Id.* ¶ 38; Dkt. No. 10-1, Ex. F (the "Agreement").  The Agreement stated,

> [O]n or about March 12, 2012, the City received a complaint in which it was alleged that [plaintiff] engaged in harassing and/or inappropriate conduct;
>
> . . .  the City commenced an investigation into the allegations and . . . determined that the allegations are sustained;
>
> . . .  [plaintiff] has acknowledge[d] and/or admitted to much of the conduct alleged and found to be sustained in the Investigation and whereas the primary dispute between the parties is the level of discipline that should be imposed for [plaintiff's] misconduct; [and]
>
> . . .  the Parties want to enter into this Agreement providing for a final disposition of this matter and certain future terms of employment for [plaintiff] . . .

Agreement, p.1.  In executing the Agreement, plaintiff stated,

> Employee understands and agrees that he is waiving any rights he has, may have had, or may have, to pursue any and all remedies available to him under any employment-related cause of action against the City, including, without limitation, any claims for discrimination, harassment, and/or retaliation, . . . the California Fair Employment and Housing Act (California Government Code § 12900 et seq.), . . . all provisions of the California Labor Code, . . . the Constitution of the United States, . . . claims of retaliation or whistle-blowing (including but not limited to California Labor Code § 1102.5, et seq., and Government Code § 12653), claims for breach of any type of contract, including written, oral, or implied, breach of any covenant, promise, or representation pertaining to [plaintiff's] employment and/or the resignation of employment by [plaintiff] from the City, whether expressed or implied, and all other claims arising in contract, tort or equity or under any other statute, federal, state or local up to the date of execution of this Agreement.

*Id.* ¶ 10.  The Agreement further established,

> Each party hereto represents and agrees that he or it has carefully read and fully understands all of the provisions of this Agreement, that he or it has had the chance to consult with a representative (including, but not limited to an attorney), and that he or it is voluntarily, without any duress or undue influence on the party of or on behalf of any Party, entering into this Agreement.

*Id.* ¶ 15.  The Agreement also included an integration clause and choice-of-law provision.  *Id.* ¶¶ 9-11, 14, 17.

After execution of the Agreement, plaintiff Derby continued in his role as the primary investigator for professional standards investigations and was assigned to conduct almost all IA

2

United States District Court
Northern District of California

investigations for the PPD.  FAC ¶ 53.  In 2014, he was assigned to conduct an IA investigation regarding PPD Officers Ingram and Sibbitt, and continued working on this investigation until his separation in January 2016.  *Id.* ¶ 54.  Plaintiff made multiple requests to interview Officers Ingram and Sibbitt, draft a report or summary of findings, and finalize the IA investigation, in accordance with established PPD policy and custom, so that the materials could be produced in response to *Pitchess* motions.[1]  *Id.* ¶¶ 55-58.  However, Chief Addington repeatedly ordered plaintiff not to finalize the IA report.  *Id.* ¶ 57-58.

Plaintiff was ordered to attend a May 2014 *Pitchess* hearing but was only permitted to bring a single document from his IA investigation that indicated Officer Ingram had been placed on administrative leave.  *Id.* ¶ 59.  Plaintiff requested permission to bring the entire IA file to the hearing and repeatedly informed City employees, including City attorneys, that he would not comply with Chief Addington's order and withhold information ordered to be disclosed by the court.  *Id.* ¶¶ 60-62.  Plaintiff was ultimately unable to attend the *Pitchess* hearing.  *Id.* ¶¶ 62-63.  Plaintiff repeatedly requested permission from Chief Addington to disclose the IA investigation and findings to the court, and Chief Addington repeatedly denied him that permission.  *Id.* ¶¶ 64-68; *see also* Dkt. No. 10-1, Ex. I.

On or about October 6, 2015, plaintiff appeared in court and testified that the PPD had withheld IA information and files from the court.  FAC ¶ 69.  Prior to his appearance in court, plaintiff and the City had been in negotiations to continue plaintiff's employment beyond his January 2016 resignation date.  *Id.* ¶ 49; *see also* Dkt. No. 10-1, Ex. G.  On October 19, 2016, however, Chief Addington informed plaintiff that the employment negotiations were being terminated.  FAC ¶¶ 50-51, 71-73; *see also* Dkt. No. 10-1, Ex. K.  After his separation from the City, plaintiff alleges that he was not allowed to work for the PPD on a per diem basis, as was

---

[1] Under *Pitchess v. Superior Court*, criminal defendants may compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge.  11 Cal. 3d 531, 536-40 (1974).  To obtain such information, a defendant must file a written motion with the appropriate court or administrative body and provide written notice to the government agency which has custody and control of the records.  *Alford v. Superior Court*, 29 Cal. 4th 1033, 1038 (2003) (citing Cal. Evid. Code § 1043).

standard policy and practice for retirees.  FAC ¶¶ 39, 74.  Plaintiff also contends that the City and Chief Addington falsely reported in his personnel file that the reason for separation was dismissal, not retirement, *id.* ¶ 75, and failed to remove the allegations of sexual harassment from his IA file in violation of departmental custom and practice.  *Id.* ¶ 76.

Plaintiff also alleges that he has a history of his fighting corruption in the PPD that started in 1991 and continued until his separation from the City in January 2016.  *Id.* ¶¶ 23-33, 53-69; *see also id.* ¶ 23 (testified before grand jury in 1991 about PPD corruption), ¶ 25 (testified before grand jury in approximately 2002-2003 about falsification of police reports); ¶¶ 27-28 (made complaints about misreported crime statistics), ¶ 33 (reported potential sexual harassment by colleague in March 2012), ¶¶ 53-69 (testified about internal affairs investigations and files on or about October 2015 after being ordered to withhold information from the court).  He also claims that defendants retaliated against him for his whistleblowing activities.  *Id.* ¶ 121; *see also id.* ¶¶ 29 (defendants failed to formally investigate sexual harassment allegations), ¶ 34 (Chief Addington "recklessly, falsely, deliberately and/or maliciously sustained [sexual harassment] allegations in order to destroy plaintiff as a competitor for the desired position"), ¶ 38 (defendants coerced plaintiff into tendering resignation in October 2012, which would be effective in January 2016), ¶ 45 (Chief Addington "continued to harass and tried to destroy plaintiff's career and further employment advancement"), ¶ 47 (defendants subjected plaintiff to a hostile work environment from October 2012 until his separation in January 2016), ¶¶ 71-73 (defendants terminated negotiations in October 2015 to extend plaintiff's employment after he testified in court); ¶ 74 (plaintiff not allowed to work for the PPD on a per diem basis as promised), ¶ 75 (defendants wrongfully reported on personnel file that plaintiff was terminated, not retired), ¶ 76 (defendants failed to purge plaintiff's IA file of the sexual harassment allegations, even after they were proven false, in violation of departmental custom and practice).

Plaintiff contends that he has exhausted all available administrative remedies.  *Id.* ¶ 13.  On March 21, 2016, he filed a claim for damages with the City pursuant to the California Government Claims Act.  *Id.* ¶ 9; *see also* Dkt. No. 10-1, Exs. A-1, A-2.  On April 22, 2016, the City denied his claim as untimely.  FAC ¶ 10; *see also* Dkt. No. 10-1, Ex. B.  On May 2, 2016, plaintiff filed a

United States District Court
Northern District of California

complaint with the California Department of Fair Employment and Housing ("DFEH").  FAC ¶ 11; *see also* Dkt. No. 10-1, Ex. D.  On May 18, 2016, he received three letters from the DFEH, including a document titled "Notice of Case Closure and Right to Sue."  FAC ¶ 12; *see also* Dkt. No. 10-1, Exs. E-1, E-2, E-3.

Plaintiff filed this lawsuit against the City and Chief Addington (collectively "defendants") on September 26, 2016.  On December 9, 2016, defendants filed a motion to dismiss.  Dkt. No. 8.  On December 21, 2016, plaintiff filed a first amended complaint, Dkt. No. 10, and a corrected first amended complaint.  Dkt. No. 11.  Defendants withdrew their motion to dismiss on December 30, 2016, and filed a new motion to dismiss with respect to the FAC on January 4, 2017.  Dkt. No. 20.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

1  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

2  (citations and internal quotation marks omitted).

3

4  **DISCUSSION**

5      Plaintiff asserts eight causes of action in his FAC.  He asserts seven claims against the

6  City: (1) wrongful termination in violation of public policy; (2) fraud; (3) negligent

7  misrepresentation; (4) breach of the covenant of good faith and fair dealing; (5) violation of

8  federal civil rights under 42 U.S.C. § 1983; (6) retaliation in violation of California Labor Code §

9  1102.5; and (7) retaliation in violation of California Government Code § 12940 *et seq.*  He asserts

10  three claims against Chief Addington: (1) fraud; (2) negligent misrepresentation; and (3) RICO

11  activities in violation of 18 U.S.C. §§ 1961, 1962, and 1964.

12

13  **I.      RICO**

14      Plaintiff alleges that Chief Addington, along with other officers and City employees, "have

15  associated for a common purpose of engaging in a course of conduct through a pattern of

16  racketeering activity in violation of 18 U.S.C. Section 1962(d)."  FAC ¶ 143.  He further alleges

17  that "Defendants have engaged in a pattern of racketeering activity" that "spanned a period of

18  years" and "recently resulted in the overturning of fifteen (15) criminal convictions."  *Id.* ¶¶ 144-

19  45.

20      Defendants contend that plaintiff's RICO claim is insufficiently pled, as he did not allege

21  and cannot establish conduct in violation of the statute.  Plaintiff's opposition did not mention or

22  discuss his RICO claim.  At the hearing, however, plaintiff's counsel argued that the FAC pled

23  sufficient facts to state a RICO claim for witness tampering in violation of 18 U.S.C. § 1512 and

24  obstruction of justice in violation of 18 U.S.C. § 1513.

25      18 U.S.C. § 1512 prohibits the use of physical force or the threat of physical force against

26  any person with the intent to "influence, delay, or prevent the testimony of any person in an

27  official proceeding," or cause or induce any person to "withhold testimony, or withhold a record,

28  document, or other object, from an official proceeding."  18 U.S.C. § 1512(a)(2).  Section 1513

United States District Court
Northern District of California

6

makes it a crime to knowingly engage in any conduct that thereby causes or threatens to cause bodily injury or property damage with the intent to retaliate against any person for "the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding." *Id.* § 1513(b). However, witness tampering and retaliation against government witnesses are actionable under 18 U.S.C. §§ 1512 and 1513, respectively, only if such conduct takes place during "an official proceeding," which is limited to specific types of proceedings. *See* 18 U.S.C. § 1515(a)(1) ("official proceeding" means "a proceeding before a judge or court of the United States," "a proceeding before the Congress," "a proceeding before a Federal Government agency which is authorized by law," or "a proceeding involving the business of insurance whose activities affect interstate commerce . . .").

In the FAC, plaintiff alleged that defendants have engaged in a pattern of racketeering activity that included:

> harassment, witness tampering, violation of civil rights of criminal defendants, obstruction of justice, false report writing, misrepresenting the existence of and withholding *Brady* material from the defense attorneys and the courts, retaliation against employees and individuals such as Plaintiff who complain about their activities, and by bringing false or exaggerated disciplinary charges against Plaintiff and other DEPARTMENT employees who would not cooperate in the fraud.

FAC ¶ 144. Accordingly, plaintiff's RICO claim appears to be based on defendants' alleged failure to provide *Pitchess* materials to the Contra Costa County Superior Court. *See, e.g., id.* ¶ 66 ("Plaintiff learned that once again the Contra Costa County courts had been mis-informed regarding the existence and contents of the Ingram/Sibbitt IA investigation.").

Plaintiff has failed to state a RICO claim upon which relief can be granted. Witness tampering and retaliation in state criminal judicial proceedings are not actionable under RICO. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003) (holding that witness tampering in state judicial proceedings is not RICO predicate act because "witness tampering is actionable under 18 U.S.C. § 1512 only if it takes place 'in an official proceeding,' which is defined in § 1515(a)(1) to include only federal proceedings"); *Jones v. City of Modesto*, No. CV F 08-0396 LJO DLB, 2008 WL 2130150, at *6-7 (E.D. Cal. May 20, 2008) ("Defendants are correct that 18 U.S.C. § 1512(b) is inapposite to any alleged misleading conduct related to [plaintiff's]

United States District Court
Northern District of California

1   state criminal proceeding.") (internal quotation marks omitted).  Furthermore, plaintiff has not

2   alleged that Chief Addington engaged in, invested, or profited from an interstate criminal

3   enterprise.  *See* FAC ¶¶ 141-50; *see also Eclectic Props. East, LLC v. Marcus & Millichap Co.*,

4   751 F.3d 990, 997 (9th Cir. 2014) ("The RICO statute sets out four elements: a defendant must

5   participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a

6   pattern (4) of racketeering activity or collection of unlawful debt.") (citing 18 U.S.C. § 1962(c)).

7       Accordingly, the Court dismisses plaintiff's RICO claim without leave to amend.

8

9   **II.    Violation of Federal Civil Rights under 42 U.S.C. § 1983**

10      Defendants argue that plaintiff's First Amendment retaliation claim[2] is barred by the

11  Agreement.  Plaintiff contends that the Settlement Agreement is unenforceable because he was

12  coerced into signing it.

13

14      **A.    First Amendment Retaliation**

15      "A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their

16  official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's

17  First Amendment rights."  *Arizona Students' Assoc. v. Arizona Bd. of Regents*, 824 F.3d 858, 867

18  (9th Cir. 2016).  To prove retaliation in violation of the First Amendment, a plaintiff must show:

19      (1) [that] he engaged in constitutionally protected activity; (2) as a result, he was
20      subjected to adverse action by the defendant that would chill a person of ordinary
        firmness from continuing to engage in the protected activity; and (3) there was a
21      substantial causal relationship between the constitutionally protected activity and
        the adverse action.

22  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  "To rise to a constitutional violation,

23  the defendant's adverse action 'must be of a nature that would stifle someone from speaking out.'"

24  *Id.* at 544.

25

26

27      [2] In addition to his First Amendment retaliation claim, plaintiff also alleges that defendants
28  have deprived him of his substantive due process rights in violation of the Fourteenth Amendment.
    FAC ¶ 121.  The parties do not specifically address this aspect of plaintiff's § 1983 claim.

United States District Court
Northern District of California

8

Defendants argue that plaintiff's First Amendment retaliation claim is barred by the terms of the Agreement.  Specifically, defendants assert:

> [E]ach of Plaintiff's retaliation claims depend on the allegation that the city ended Plaintiff's employment in January 2016 because of his alleged whistleblowing activity.  However, as discussed above, Plaintiff tendered an 'irrevocable resignation, effective January 8, 2016' when he executed a settlement agreement as a result of a sustained sexual harassment complaint.
>
> . . .
>
> As a result, Plaintiff's own FAC and exhibits demonstrate that his employment ended in January 2016 pursuant to the parties' agreement and his own irrevocable resignation.  These facts 'trump[]' Plaintiff's belief that his alleged whistleblowing activity motivated the City to end his employment.

Mot. (Dkt. No. 20) at 13 (internal citations omitted).  Defendants thus appear to contend that plaintiff cannot bring a retaliation claim because he resigned and therefore could not have been retaliated against.[3]  Alternatively, defendants argue that plaintiff's § 1983 claim is time-barred.

Plaintiff has alleged sufficient facts to state a First Amendment retaliation claim with respect to his October 2015 testimony in court.  Specifically, plaintiff has alleged that he engaged in protected activity by testifying in court about defendants' failure to disclose the existence and contents of the internal affairs investigation against Officers Ingram and Sibbitt.  FAC ¶¶ 53-69.  Plaintiff has also alleged that defendants took several adverse actions against him by terminating negotiations to extend plaintiff's employment with the City, *id.* ¶¶ 49-51, 70-73, refusing to provide plaintiff with per diem employment following his retirement, *id.* ¶ 74, falsely reporting that plaintiff's reason for separation was dismissal, as opposed to retirement, *id.* ¶ 75, and failing to purge plaintiff's internal affairs file of the prior sexual harassment allegations in violation of standard policy and practice.[4]  *Id.* ¶ 76.  Finally, a causal relationship can be inferred from the

---

[3] In their papers and at oral argument, defendants argue that plaintiff's retaliation claims are based solely on his resignation.  However, plaintiff clarified at the hearing that his retaliation claim is based on conduct that occurred both before and after execution of the Agreement.

[4] Plaintiff claims that the sustained sexual harassment findings should have been removed from his IA file after he was granted summary judgment in the civil case because the PPD had a policy and practice of removing IA findings that were later proven false.  Specifically, he alleges:

> Defendants failed to follow their own policy and practice following execution of the agreement in that plaintiff's IA findings were not reversed even though his accuser later admitted to committing perjury, admitted that many of her allegations were written for her by an attorney and were untrue when she claimed they were

timing of events, as plaintiff was notified of defendants' decision to terminate the employment negotiations on October 19, 2015, approximately 13 days after his testimony about the omitted internal affairs investigation. *Id.* ¶ 71.

However, to the extent that plaintiff's First Amendment retaliation claim is based on alleged adverse employment actions that occurred before October 2012, such as defendants' investigation of the sexual harassment complaint and execution of the Agreement, those claims are no longer actionable due to the statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (holding that § 1983 claims are most appropriately characterized as personal injury claims); Cal. Civ. Proc. Code § 335.1 (two-year statute of limitations for personal injury claims). To the extent that plaintiff's § 1983 retaliation claim is based on other actions that defendants took prior to plaintiff's resignation in January 2016, such as excluding plaintiff from meetings and departmental photographs, the Court cannot determine if plaintiff's claims are timely because the FAC does not specify how these acts were retaliatory and when these acts occurred.

Accordingly, defendants' motion to dismiss, as it pertains to the alleged termination of re-employment negotiations, is denied. Plaintiff's First Amendment claim, as it is based on alleged adverse employment actions that occurred before October 2012, is dismissed without leave to amend. The balance of plaintiff's § 1983 claim, to the extent that it alleges other retaliation prior to January 2016, is dismissed with leave to amend.

### B.    Enforceability of the Agreement and Release

Defendants also argue that plaintiff's § 1983 claim is barred by the general release of claims in the Agreement. It is undisputed that plaintiff signed a general release of "[a]ny and all claims . . . arising out of the employment of, and/or the resignation of employment by [plaintiff] from the City, and/or with respect to any other claims, matter, or event arising prior to the execution of this Agreement by the Parties." Agreement ¶ 9. However, the parties dispute the enforceability of plaintiff's release of claims in the Agreement. Defendants contend that the

United States District Court
Northern District of California

true (under penalty of perjury), and her claims against plaintiff were dismissed. FAC ¶ 42.

1    Agreement's release is enforceable because the Agreement states that plaintiff executed it

2    "voluntarily, without any duress or undue influence," *id.* ¶ 15, and defendants note that plaintiff

3    conferred with counsel prior to signing the Agreement.  Plaintiff counters that "[he] has made

4    factual claims of duress, that if true, fall squarely in the mainstream of situations where a

5    settlement agreement will not be enforced."  Opp'n (Dkt. No. 25) at 9.[5]

6        "A release of claims under section 1983 is valid only if it results from a decision that is

7    voluntary, deliberate, and informed.  There are both subjective and objective aspects to each of

8    these elements."  *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981) (citations omitted).

9    "Although legal representation is an important factor in assessing the voluntariness of a release of

10   federal rights, it is not dispositive.  Whether such a release was voluntarily executed is a question

11   of fact to be determined from all the circumstances."  *Salmeron v. United States*, 724 F.2d 1357,

12   1362 (9th Cir. 1983) (citing *Jones*, 648 F.2d at 1203.).

13       Plaintiff argues that the Agreement is unenforceable because his consent was obtained

14   through duress, fraud, and undue influence.  With respect to the element of duress, plaintiff alleges

15   that he was "coerced into signing" the Agreement "at the threat of an undeserved employment

16   action such as termination or demotion."  FAC ¶ 38.  Furthermore, plaintiff claims that defendants

17   "knew that Plaintiff was in an unequal bargaining position and would be required to sign the

18   agreement."  *Id.* ¶ 88.  Plaintiff also contends that his consent was obtained through fraud, as

19   defendants allegedly promised him that he "would have the opportunity to renegotiate the

20   resignation depending on the outcome of the [sexual harassment] allegations" and "could continue

21   working per diem following any retirement from the DEPARTMENT" while negotiating the

22   Agreement, which he relied upon.  *Id.* ¶¶ 39, 48.  Defendants counter that the Agreement explicitly

United States District Court
Northern District of California

25       [5]   At the hearing, the Court questioned plaintiff's counsel regarding whether plaintiff
26   challenged only the validity of the release, or whether plaintiff sought to set aside the settlement
     agreement as a whole.  Counsel suggested that plaintiff sought to set aside the Agreement as a
27   whole, while alternatively suing to enforce the Agreement by alleging claims for breach of
     contract and/or breach of the implied covenant of good faith and fair dealing. Plaintiff is directed
28   to clarify in the amended complaint if plaintiff is challenging the validity of the release and/or the
     validity of the Agreement as a whole.

establishes that plaintiff executed the Agreement "voluntarily, without any duress or undue influence." Agreement ¶ 15.

Although defendants make persuasive arguments in favor of the validity of the release, the Court finds that it is not appropriate to resolve questions about the validity of the release at the pleading stage.[6] *See, e.g.*, *McCray v. Casual Corner, Inc.*, 812 F. Supp. 1046 (C.D. Cal. 1992) (validity of release decided at summary judgment); *Johnson v. Int'l Bus. Machs. Corp.*, 891 F. Supp. 522 (N.D. Cal. 1995) (validity of release decided at trial). Accordingly, the Court denies defendants' motion to dismiss plaintiff's § 1983 claim.

## III.     Wrongful Termination in Violation of Public Policy

Plaintiff claims that he was forced to tender his irrevocable resignation in retaliation for engaging in whistleblowing activities. Specifically, he alleges:

> 80. Whistle blowing is and was at all relevant times a clear public policy.

> 81. The conduct engaged in by defendants prior to and subsequent to the signing of the stipulated agreement was engaged in by defendants to discourage Plaintiff's whistle blowing activities. Defendants [sic] conduct discouraged whistle blowing by Plaintiff and other employees of the DEPARTMENT, and in fact jeopardized that public policy.

> 82. Plaintiff was coerced into signing the stipulated settlement between Plaintiff and defendants regarding the IA charges . . .

> . . .

> 85. The IA charges which were used to coerce plaintiff's execution of the stipulated agreement were in substantial part unfairly investigated, contrived, fabricated and exploited to silence Plaintiff.

---

[6] If plaintiff is challenging the enforceability of the settlement agreement as a whole, it is unclear whether federal or California law governs that analysis. *See Evans v. Asian Recovery Servs.*, No. C-08-0944 EMC, 2008 WL 5273748, at *7 (N.D. Cal. Dec. 19, 2008) ("In *Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir.1989), the Ninth Circuit held that construction and enforcement of a settlement is governed by local laws. . . . [T]he relationship between this rule in *Jeff D*. and the application of federal law as to release and waivers under *Salmeron* and *Jones* seems unclear. . . ."). Under California law, because "[s]ettlements are contracts," "one must present contractual grounds for rescission--fraud, mutual mistake, coercion, etc." in order to set them aside. *Huens v. Tatum*, 52 Cal. App. 4th 259, 264 (3d Dist. 1997); *see also* Cal. Civ. Code § 1689 ("A party to a contract may rescind the contract . . . [i]f the consent of the party rescinding . . . was given by mistake, or obtained through duress, menace, fraud, or undue influence.").

> 86. The settlement did not serve a legitimate public purpose, and was made in violation of public policy, as evidenced by the fact that the "retirement" was not to take place until four years hence and defendants used the threat of discipline to extract an agreement from plaintiffs against petitioning for redress for whistle blowing activities preceding the signing of the agreement as a condition of the agreement.

FAC ¶¶ 80-86.  Plaintiff further alleges that "[t]he sustaining of the unfounded IA and the coercion inherent in the settlement agreement was a violation of the public trust" and that "[t]he agreement itself is unenforceable because of these substantial violations." *Id.* ¶¶ 92-93.

Defendants argue that because the City of Pittsburg is a governmental entity, plaintiff's common law claim for wrongful termination in violation of public policy is barred by the California Government Claims Act.  *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 898-99 (2008) ("[S]ection 815 [of the Government Claims Act] bars *Tameny* actions[7] against public entities.").

Plaintiff argues that his claim is not barred, pointing to the exception to public entity tort liability established in California Government Code § 815.6.  Although Count One is titled "wrongful termination" in the FAC, plaintiff confusingly asserts in his opposition that "Count one is not a wrongful termination count." Opp'n at 6.  Plaintiff contends that his first cause of action "focuses on the misuse of the Internal Affairs process as a weapon to harm [him]" because he was deprived of a genuine hearing, despite the Pittsburg Police Department's duty to establish and publish a procedure to investigate citizen complaints pursuant to California Penal Code § 832.5. *Id.*

Under the Government Claims Act, public entities are not liable for injuries arising from acts or omissions of the public entity except as provided by statute.  Cal. Gov't Code § 810 *et seq.* Such a statutory exception can be found in Government Code § 815.6, which provides,

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the

---

[7] In *Tameny v. Atlantic Richfield Co.*, the California Supreme Court recognized the common law claim of wrongful termination in violation of public policy. 27 Cal. 3d 167, 172-78 (1980).  The high court stated: "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id.* at 170.

United States District Court
Northern District of California

duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Gov't Code § 815.6.  Accordingly, a public entity may be liable if "(1) a mandatory duty is imposed by enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury."  *State Dep't of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 348 (2015).

Multiple state courts have discussed what is necessary to establish a mandatory duty.  "First and foremost, application of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive . . . it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken."  *Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000) (italics in original).  The obligation to perform a function does not constitute a mandatory duty "if the function itself involves the exercise of discretion."  *Id*.  Accordingly, a mandatory duty is created "only when an enactment requires an act that is clearly defined and not left to the public entity's discretion or judgment."  *State Dep't of State Hosps.*, 61 Cal. 4th at 350; *see also Guzman v. City of Monterey*, 46 Cal. 4th 887, 898 (2009) ("Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment affirmatively imposes the duty and provides implementing guidelines.") (internal quotation marks omitted).

"Second, but equally important, section 815.6 requires the mandatory duty be designed to protect against the particular kind of injury the plaintiff suffered.  The plaintiff must show the injury is one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty."  *Haggis*, 22 Cal. 4th at 499 (citation and internal quotation marks omitted).  If these first two prongs are met, the plaintiff must then demonstrate that the public entity's breach of duty was a proximate cause of his injury.  *See Guzman*, 46 Cal. 4th at 898.

Plaintiff's argument that his wrongful termination claim is based on defendants' violation of Penal Code § 832.5 is unavailing.  Section 832.5 requires each public agency that employs peace officers to "establish a procedure to investigate complaints by members of the public against the [officers]" and "make a written description of the procedure available to the public."  Cal. Pen. Code § 832.5(a)(1).  However, plaintiff does not allege that he was injured by the City's failure to establish a procedure to investigate citizen complaints.  *See* Opp'n at 6-7.  Rather, plaintiff claims

1    that his superior officers abused the internal affairs process and deprived him of a "genuine"

2    hearing.  *Id.*  Since this theory of liability is not based on the City's duty under Penal Code

3    § 832.5, Government Code § 815.6 does not apply.

4        As plaintiff has failed to allege sufficient facts to satisfy the mandatory duty exception

5    established in Government Code § 815.6, plaintiff's common law claim for wrongful termination

6    in violation of public policy is barred by the California Government Claims Act.  *See Miklosy*, 44

7    Cal. 4th at 898-99.  Defendants' motion to dismiss this claim is granted without leave to amend.

8

9    **IV.    Fraud and Negligent Misrepresentation**

10       Defendants contend that plaintiff's claims for fraud and negligent misrepresentation

11   against the City must be dismissed because he failed to present his claims in compliance with the

12   Government Claims Act.  Plaintiff counters that "Counts Two and Three are contract based claims

13   and are not governed by the tort claims provisions."  Opp'n at 7.

14       The Government Claims Act "sets forth the statutory scheme relating to contract and tort

15   liabilities of public entities."  *Janis v. California State Lottery Comm.*, 68 Cal. App. 4th 824, 830

16   (2d Dist. 1998).  Plaintiffs asserting claims "for money or damages" against a public entity must

17   comply with the detailed requirements outlined in the Government Claims Act.  Cal. Gov't Code

18   § 905; *Williams*, 16 Cal. 3d at 838.  One such prerequisite is that a claimant must "present a claim

19   to the public entity within a specified time after accrual of the cause of action."  *Phillips v. Desert*

20   *Hosp. Dist.*, 49 Cal. 3d 699, 705 (1989).  Timely claim presentation is not simply a procedural

21   requirement, but "a condition precedent to plaintiff's maintaining an action against defendant" and

22   "thus an element of the plaintiff's cause of action."  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th

23   201, 209 (2007).  A plaintiff may bring a lawsuit only after the public entity has acted upon or is

24   deemed to have rejected the claim.  *Id.*  The Government Claims Act's claim presentation

25   requirements do not simply apply to tort causes of action, but to contract-based claims as well.

26   *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738-741 (2007).

27       In his FAC, plaintiff alleges that defendants fraudulently or negligently induced him to

28   execute the Agreement because he was informed that he could potentially renegotiate his

15

resignation and continue working for the City on a per diem basis following his retirement.  FAC ¶¶ 38-42, 98, 104.  He contends that when consenting to the Agreement, he was also induced to rely upon an alleged departmental policy of setting aside prior negative internal affairs findings if they were subsequently proven false.  *Id.*  He further asserts that "[he] did not discover[] the nature of the fraud until negotiations for continued employment were cut off in or around November 2015."  *Id.* ¶ 101.  However, plaintiff's March 2016 government claim to the City stated:

> Derby was told by Addington that the IA was going against Derby and that Derby would be demoted and likely terminated.  He offered Derby a deal.  Agree to resign in early 2016, take a few days off work and keep his rank.  Derby accepted the deal rather than risk his pension and his reputation.
>
> . . .
>
> Addington became Chief and Raman a captain.  When the lawsuit was dismissed and Derby's innocence proven, the Chief failed and refused to purge the IA file or rescind the coerced retirement date . . .

Dkt. No. 10-1, Ex. A-2.  Plaintiff's government claim simply states that he negotiated a deal with Chief Addington, he accepted that deal, and Chief Addington did not purge plaintiff's IA file or rescind the retirement date.  *Id.*  The thirty-two page narrative that plaintiff submitted in support of his government claim did not mention or discuss the allegedly fraudulent or negligent misrepresentations that plaintiff alleges that he relied upon in executing the Agreement.  *See id.*

The Court finds that plaintiff failed to present his claims of fraud and negligent misrepresentation to the City in accordance with the Government Claims Act's claim presentation requirements.  Since "all claims for money or damages" must be presented to the public entity, regardless of whether the claim is based in tort or contract, *City of Stockton*, 42 Cal. 4th at 738-41, plaintiff was required to present his claims of fraud and negligent misrepresentation to the City as a condition precedent to filing suit.  *Shirk*, 42 Cal. 4th at 209.  Plaintiff alleges that his causes of action accrued in or around November 2015, FAC ¶ 101, and he submitted a claim to the City on March 21, 2016.  *See* Cal. Gov't Code § 911.2(a) (requiring that claims relating to death or personal injury be presented no later than six months after cause of action accrued).  However, plaintiff's government claim did not mention or discuss the fraudulent or negligent misrepresentations that the City allegedly made to induce or coerce his consent to the Agreement.

1   *See* Dkt. No. 10-1, Exs. A-1, A-2.  Furthermore, plaintiff is barred from presenting those theories

2   of liability to the City now.  *See* Cal. Gov't Code § 911.4(a)-(b) (requiring that complainant

3   request leave from public entity to present late claim within one year after cause of action

4   accrued).  Accordingly, plaintiff cannot assert his fraud and negligent misrepresentation claims

5   against the City due to his failure to comply with the Government Claims Act's claim presentation

6   requirements and are dismissed without leave to amend.

7        In addition, subject to certain exceptions not applicable here, the Government Claims Act

8   bars suits against a current or former public employee "for injury resulting from an act or omission

9   in the scope of his employment as a public employee" if the same cause of action is barred against

10   the public entity.  Cal. Gov't Code § 950.2.  Section 950.2 also applies to bar actions against

11   public employees even when the public entity is immune from liability for that injury.  *Id.*

12        Here, because plaintiff failed to present his claims to the City in accordance with the

13   Government Claims Act's claim presentation requirements, plaintiff's fraud and negligent

14   misrepresentation claims against Chief Addington are also barred and dismissed without leave to

15   amend.  Accordingly, the Court declines to consider defendants' alternative arguments for

16   dismissing plaintiff's claims.

17

18   **V.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

19        Plaintiff's Fourth Cause of Action is titled "Breach of the Contract and the Covenant of

20   Good Faith and Fair Dealing."  FAC ¶¶ 109-14.  Specifically, plaintiff claims:

21       110.  Plaintiff was employed by and had a protected civil service position
22   constituting [sic] with defendant CITY.  Plaintiff was also entitled to an additional
    term of years of employment pursuant to the terms of his 2012 stipulated agreement
23   with defendant CITY.  Each of Plaintiff's contracts with defendant CITY contained
    an implied covenant of good faith and fair dealing, pursuant to which defendant
24   agreed to deal in good faith and fairly with Plaintiff, and to avoid any act that
    would deprive Plaintiff of the benefits of the agreement.

25

26       111.  Notwithstanding this implied covenant, by engaging in the acts stated in this
27   complaint, defendant CITY breached the agreement.

28

United States District Court
Northern District of California

112. Plaintiff has fully performed all of the terms and conditions required of Plaintiff by the terms of the agreement, except those waived, excused, or prevented by defendant CITY, and defendant's performance has not been excused.

113. Such actions by defendant CITY, among other wrongful conduct, breached the implied covenant of good faith and fair dealing.

*Id.* ¶¶ 110-13.[8]

Defendants argue that plaintiff's claim for breach of the implied covenant of good faith and fair dealing lacks merit because his claim relies on theories not encompassed in the Agreement. Plaintiff responds in his opposition that "there is no evidence that defendants complied with the agreement. To the contrary, the treatment of Wade Derby post signing was abysmal. Derby was allowed to work but under horrible conditions." Opp'n at 12.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988) (quoting Rest. 2d Contracts, § 205). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original); *see also Foley*, 47 Cal. 3d at 690 ("The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes."). Accordingly, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349-50.

---

[8] Although titled "breach of contract . . ." the FAC appears to allege only that defendants' actions breached the implied covenant of good faith and fair dealing. At the hearing, in response to the Court's question regarding whether plaintiff sought to assert a breach of contract claim, plaintiff's counsel seemed to suggest that plaintiff wished to assert both a claim for breach of contract and a claim breach of the implied covenant of good faith and fair dealing. If plaintiff wishes to assert a claim for breach of contract, plaintiff shall clearly do so in the amended complaint.

United States District Court
Northern District of California

In his FAC, plaintiff alleges that defendants breached the Agreement and covenant of good faith and fair dealing by "withholding crucial information leading up to the signing of the agreement," "creating and sustaining a hostile work environment," and "taking adverse employment actions against Plaintiff." FAC ¶¶ 83-84.

Plaintiff has failed to allege sufficient facts to state a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff's claim, to the extent it is based on "withholding crucial information leading up to the signing of the agreement," fails because such conduct occurred before the Agreement, and thus before the covenant of good faith and fair dealing, existed. *See Qureshi v. Countrywide Home Loans, Inc.*, No. C 09-4198 SBA, 2010 WL 841669, at *10 (N.D. Cal. Mar. 10, 2010) ("Pre-contract conduct cannot support a claim for breach of the implied covenant of good faith and fair dealing.") (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2d Dist. 2008)). As to the remainder of plaintiff's claim, plaintiff has not alleged how defendants' alleged conduct in "creating and sustaining a hostile work environment" and "taking adverse employment actions against Plaintiff" breached the covenant of good faith and fair dealing.

Accordingly, insofar as plaintiff's claim is based on the withholding of information before execution of the Agreement, defendants' motion to dismiss is granted without leave to amend, and the balance of plaintiff's claim is dismissed with leave to amend.

## VI.   Statutory Retaliation Claims

Defendants argue that plaintiff's statutory retaliation claims are barred by the Agreement. Defendants alternatively contend that plaintiff's retaliation claims are barred under the applicable statutes of limitations. Plaintiff argues that the Agreement is unenforceable because he was coerced into signing it. As explained in Section II., *supra*, the Court declines to find that the Agreement is enforceable based simply on the pleadings. For this reason, the Court now examines whether plaintiff has alleged sufficient facts to state claims for statutory retaliation under Labor Code § 1102.5 and Government Code § 12940 *et seq.* upon which relief can be granted.

United States District Court
Northern District of California

**A.      California Labor Code § 1102.5**

California Labor Code § 1102.5 "reflects the broad public policy interest in encouraging workplace whistle blowers to report unlawful acts without fearing retaliation."  *Green v. Ralee Eng'g. Co.*, 19 Cal. 4th 66, 77 (1998).  To bring a claim for retaliation under § 1102.5, "'a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two.'"  *Dowell v. Contra Costa Cnty.*, 928 F.Supp.2d 1137, 1154 (N.D. Cal. 2013).  A plaintiff seeking to bring a claim under § 1102.5 against a public entity must comply with the claims representation requirements of the Government Claims Act.  *Id.* at 1151.

In his FAC, plaintiff alleges:

130. Plaintiff, as stated throughout this Complaint, repeatedly communicated improper government activities pursuant to his duties as a Lieutenant internally to Defendants.  When Plaintiffs [sic] disclosures were ignored by Defendant ADDINGTON, Plaintiff reported this conduct to defendant CITY, other employees, and ultimately to the Contra Costa County Superior Court.  Plaintiff has engaged in protected activities under Labor Code § 1102.5 by reporting these events.

131. As a direct and proximate result of engaging in the aforementioned protected activities, the reporting of corruption and refusal to engage in unlawful activity as alleged herein, WADE Plaintiff [sic] has been subjected to a hostile work environment, a continuous and ongoing course of adverse employment actions, including, but not limited to, being wrongfully harassed and coerced into taking an unwanted "retirement," and having his separation from employment falsely listed as dismissal rather than retirement.

132. Plaintiff suffered an adverse employment action in retaliation for his objections when Plaintiff's employment contract was not modified, and he was forced into retirement, and his separation from DEPARTMENT was falsely listed as dismissal rather than retirement.  Such actions are unlawful, and retaliatory in violation of Labor Code § 1102.5, have resulted in damage and injury to Plaintiff, and Plaintiff is entitled to all available categories of damages.

FAC ¶¶ 130-32.  Plaintiff further alleged that he presented his claim to the City in accordance with the Government Claims Act's requirements on March 21, 2016, which was denied as untimely on April 22, 2016.

Defendants appear to assert that plaintiff cannot bring a retaliation claim because he resigned and therefore could not have been retaliated against.  Defendants also assert "[t]he applicable statutes of limitation bar each of Plaintiff's retaliation claims as Plaintiff filed his civil

1   complaint and associated administrative charges more than two years after October 2012."  Reply

2   (Dkt. No. 26) at 15.

3       The Court finds that plaintiff has sufficiently alleged a factual basis to support his

4   whistleblower claim to the extent the claim is based on plaintiff's allegations that defendants

5   retaliated against him after he engaged in protected activity by testifying in court in October 2015

6   about defendants' failure to disclose the existence and contents of the IA investigation against

7   Officers Ingram and Sibbitt.  *Id.* ¶¶ 53-69.

8       To the extent that plaintiff's § 1102.5 retaliation claim is based on other allegedly adverse

9   employment actions, the Court dismisses the claim with leave to amend.  If plaintiff wishes to

10  challenge other allegedly adverse employment actions as retaliatory under § 1102.5, plaintiff must

11  allege when he engaged in protected activity, the timing and nature of any adverse actions, and

12  compliance with the Government Claims Act.  *See Dowell*, 928 F. Supp. 2d 1137, 1151 (N.D. Cal.

13  2013) (plaintiff required to comply with Government Claims Act and present state claims,

14  including § 1102.5 claim, before filing suit); Cal. Gov't Code § 911.2(a) (requiring that personal

15  injury claims be presented no later than six months after cause of action accrued).

16

17      **B.      California Government Code § 12940 *et seq.***

18      California's Fair Employment and Housing Act ("FEHA") "establishes a comprehensive

19  scheme for combating employment discrimination."  *Brown v. Superior Court*, 37 Cal. 3d 477,

20  485 (1984).  To establish a *prima facie* case of retaliation under FEHA, "a plaintiff must show (1)

21  he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse

22  employment action, and (3) a causal link existed between the protected activity and the employer's

23  action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

24      Plaintiff alleges that defendants refused to renegotiate his resignation and renew his

25  employment contract in retaliation for his protected activities.  FAC ¶¶ 139-40.  Specifically, he

26  alleges:

27          139. Plaintiff repeatedly communicated both verbally and in writing to his
            superiors his concerns about gross mismanagement, unlawful and unethical
28          conduct in the DEPARTMENT, including sex discrimination in employment and

hiring practices, instances of ongoing sexual and other harassment toward female officers, and in relation to Defendant's handling of the "Suspicious Circumstances" cases, as well as its handling of the *Pitchess* hearings.

140. Defendant ADDINGTON ultimately sent Plaintiff written communication indicating his and DEPARTMENT's refusal to further negotiate Plaintiff's continued employment. They further denied plaintiff the opportunity to work on a per diem basis following his retirement in 2016.

141. Defendant's actions violate California Government Code § 12940 as reprisal to Plaintiff's whistle blowing activities entitling Plaintiff to all available categories of damages.

*Id.* at ¶¶ 139-41.

Defendants contend that plaintiff cannot bring a retaliation claim because he resigned and therefore could not have been retaliated against. Defendants also argue that plaintiff's retaliation claim is barred by the applicable statute of limitations.

For the reasons stated above, the Court finds that plaintiff has stated a claim for retaliation to the extent plaintiff challenges the alleged termination of re-employment negotiations. To the extent plaintiff challenges other acts as retaliatory, the Court dismisses the claim with leave to amend to clarify the protected activity, adverse acts and causal relationship.

///

///

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss plaintiff's FAC is GRANTED in part as follows:

1. Plaintiff's RICO claim against Chief Addington is dismissed without leave to amend.

2. Plaintiff's 42 U.S.C. § 1983 retaliation claim is partially dismissed without leave to amend and partially dismissed with leave to amend.

3. Plaintiff's claim for wrongful termination in violation of public policy is dismissed without leave to amend.

4. Plaintiff's fraud and negligent misrepresentation claims against both defendants are dismissed without leave to amend.

5. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is partially dismissed without leave to amend and partially dismissed with leave to amend.

6. Plaintiff's statutory retaliation claims under California Labor Code § 1102.5 and Government Code § 12940 *et seq.* are partially dismissed without leave to amend and partially dismissed with leave to amend.

If plaintiff wishes to amend the complaint, plaintiff must do so by **March 9, 2017.**

**IT IS SO ORDERED**.

Dated: February 23, 2017

SUSAN ILLSTON
United States District Judge