UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WADE DERBY,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PITTSBURG and DOES 1-10,<br><br>    Defendants. | Case No. 16-cv-05469-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 33 |

Defendant's motion to dismiss plaintiff's second amended complaint is scheduled for a hearing on April 28, 2017. The Court finds this matter suitable for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss certain claims in the second amended complaint without leave to amend.

**BACKGROUND**

This lawsuit arises out of plaintiff Wade Derby's employment with the City of Pittsburg ("the City"). The following is taken from the Second Amended Complaint ("SAC"). Derby was hired by the City as a police officer with the Pittsburg Police Department ("PPD") in 1998. SAC (Dkt. No. 32) ¶ 14. He was employed by the City for twenty-eight years in various roles. *See id.* ¶¶ 14-21. By 2009, Derby was the lead investigator in charge of the PPD's professional standards, or internal affairs ("IA") investigations. *Id.* ¶¶ 21, 32. He continued in this role until his separation from the City in January 2016. *Id.* ¶ 21.

The SAC alleges that in March 2012, "plaintiff alerted ADDINGTON, then a Captain in the command chain who was competing with plaintiff for the position of Chief, of potential sexual harassment of [a female employee] Wilkerson by Lieutenant Raman. No internal investigation was done of Raman." *Id.* ¶ 33. However, "the allegations then turned against plaintiff, and

plaintiff, the whistle blower, became the focus of mistreatment of Wilkerson." *Id*. ¶ 34. Plaintiff alleges that Addington was assigned the IA investigation against plaintiff, and that he sustained the sexual harassment allegations "in order to destroy plaintiff as a competitor for the desired position." *Id*. Wilkerson also filed a civil lawsuit against plaintiff, the City, and Raman. *Id.* ¶ 35. Derby was granted summary judgment in the civil lawsuit. *Id.*[1]

In October 2012, plaintiff "was coerced into signing, at the threat of an undeserved adverse employment action such as termination or demotion," a Settlement Agreement and Release with the City, where he tendered an "irrevocable resignation," effective January 8, 2016, in exchange for the City's agreement to not terminate or demote plaintiff. *Id.* ¶ 38; Dkt. No. 32-1, Ex. F (the "Agreement"). The Agreement stated,

> [O]n or about March 12, 2012, the City received a complaint in which it was alleged that [plaintiff] engaged in harassing and/or inappropriate conduct;
>
> . . . the City commenced an investigation into the allegations and . . . determined that the allegations are sustained;
>
> . . . [plaintiff] has acknowledge[d] and/or admitted to much of the conduct alleged and found to be sustained in the Investigation and whereas the primary dispute between the parties is the level of discipline that should be imposed for [plaintiff's] misconduct; [and]
>
> . . . the Parties want to enter into this Agreement providing for a final disposition of this matter and certain future terms of employment for [plaintiff] . . .

Agreement, p.1. In executing the Agreement, plaintiff stated,

> Employee understands and agrees that he is waiving any rights he has, may have had, or may have, to pursue any and all remedies available to him under any employment-related cause of action against the City, including, without limitation, any claims for discrimination, harassment, and/or retaliation, . . . the California Fair Employment and Housing Act (California Government Code § 12900 et seq.), . . . all provisions of the California Labor Code, . . . the Constitution of the United States, . . . claims of retaliation or whistle-blowing (including but not limited to California Labor Code § 1102.5, et seq., and Government Code § 12653), claims for breach of any type of contract, including written, oral, or implied, breach of any covenant, promise, or representation pertaining to [plaintiff's] employment and/or the resignation of employment by [plaintiff] from the City, whether expressed or

---

[1] Defendant's motion to dismiss the SAC states that "the summary judgment motion was granted on purely procedural grounds because that accuser failed to comply with the Government Claims Act." Motion at 1:17-18 (Dkt. No. 33).

implied, and all other claims arising in contract, tort or equity or under any other statute, federal, state or local up to the date of execution of this Agreement.

*Id.* ¶ 10. The Agreement further established,

Each party hereto represents and agrees that he or it has carefully read and fully understands all of the provisions of this Agreement, that he or it has had the chance to consult with a representative (including, but not limited to an attorney), and that he or it is voluntarily, without any duress or undue influence on the party of or on behalf of any Party, entering into this Agreement.

*Id.* ¶ 15. Pursuant to the Agreement, in exchange for the City's agreement not to demote or terminate plaintiff, plaintiff agreed to accept certain discipline, including suspension, reassignment to performing Lieutenant level duties of an administrative nature for the remainder of his employment, and to undergo training. *Id*. ¶ 5. The City also agreed that "no further discipline shall be considered or taken by the City towards Employee in response to the allegations set forth in the Investigation." *Id*. ¶ 8.

After execution of the Agreement, plaintiff continued in his role as the primary investigator for professional standards investigations and was assigned to conduct almost all IA investigations for the PPD. SAC ¶ 40. In 2014, he was assigned to conduct an IA investigation regarding PPD Officers Ingram and Sibbitt, and continued working on this investigation until his separation in January 2016. *Id.* ¶ 41. Plaintiff made multiple requests to interview Officers Ingram and Sibbitt, draft a report or summary of findings, and finalize the IA investigation, in accordance with established PPD policy and custom, so that the materials could be produced in response to *Pitchess* motions.[2] *Id.* ¶¶ 42-44. However, Chief Addington repeatedly ordered plaintiff not to finalize the IA report. *Id.* ¶¶ 44-45.

Plaintiff was ordered to attend a May 2014 *Pitchess* hearing but was only permitted to bring a single document from his IA investigation that indicated Officer Ingram had been placed on administrative leave. *Id.* ¶ 46. Plaintiff requested permission to bring the entire IA file to the

---

[2] Under *Pitchess v. Superior Court*, criminal defendants may compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. 11 Cal. 3d 531, 536-40 (1974). To obtain such information, a defendant must file a written motion with the appropriate court or administrative body and provide written notice to the government agency which has custody and control of the records. *Alford v. Superior Court*, 29 Cal. 4th 1033, 1038 (2003) (citing Cal. Evid. Code § 1043).

3

1 hearing and repeatedly informed City employees, including City attorneys, that he would not
2 comply with Chief Addington's order and withhold information ordered to be disclosed by the
3 court. *Id.* ¶¶ 47-48. The *Pitchess* hearing was continued to a later date and plaintiff was unable to
4 attend because the hearing was rescheduled to a date plaintiff was known to be on vacation. *Id.*
5 ¶¶ 49-50. Plaintiff learned upon his return from vacation that his investigation and the contents of
6 his IA file were not disclosed at the *Pitchess* hearing. *Id*. ¶ 51. Plaintiff then wrote a memo to
7 Addington again requesting permission to draft a summary of his IA investigation which would be
8 available to the court on review of a *Pitchess* motion, and Addington again ordered plaintiff not to
9 draft such a summary. *Id*. ¶ 52.

The SAC alleges that in the midst of these events, toward the end of 2014, plaintiff took the captain's promotional examination. *Id*. ¶ 53. Plaintiff alleges, "[t]his time, instead of placing as the top candidate as he had when he took the examination in 2011, plaintiff was told he was not 'qualified' for the promotion based on the prior sexual harassment allegations." *Id*. Plaintiff alleges that the designation as "unqualified" was contrary to the 2012 settlement agreement stating that no further discipline would be taken against plaintiff as a result of those allegations, and was taken in retaliation for plaintiff speaking out about the Sibbitt and Ingram IAs. *Id*.

On or about March 3, 2015, plaintiff learned that once again the Contra Costa County courts had been misinformed regarding the existence and contents of the Sibbitt and Ingram IAs, and plaintiff again advised employees of the City and Department of the need to disclose such information. *Id*. ¶ 54. Addington refused to allow plaintiff permission to appear in court to correct the record, and in or around March 15, 2015, Addington told plaintiff to consider the investigation of officers Ingram and Sibbitt closed. *Id*. ¶¶ 55-56.

On or about October 6, 2015, plaintiff appeared in court and testified that the PPD had withheld IA information and files from the court. *Id.* ¶ 57. The SAC alleges that plaintiff's whistleblowing activities recently resulted in the setting aside of 15 convictions that were wrongfully obtained by defendants' illegal actions and Addington's withholding *Brady* material during *Pitchess* hearings. *Id*. ¶ 58, Dkt. No. 32-1, Ex. M (December 14, 2016 newspaper article regarding dismissal of 15 convictions).

4

Prior to his appearance in court, plaintiff and the City had been in negotiations to continue plaintiff's employment beyond his January 2016 resignation date depending on the outcome of the civil case filed by Wilkerson. *Id.* ¶ 60. Plaintiff was also advised that he could continue working per diem following any retirement from the Department as was standard policy, practice and procedure for retirees. *Id*. Plaintiff alleges that the City prepared a draft "First Amendment to the Settlement Agreement and Release" that would have permitted plaintiff to continue working for the department after January 2016. *Id*. ¶ 61, Dkt. No. 32-1, Ex. G (draft amendment).

On October 19, 2016, however, Chief Addington informed plaintiff that the employment negotiations were being terminated. SAC ¶¶ 62-69; *see also* Dkt. No. 32-1, Ex. K. After his separation from the City, plaintiff alleges that he was not allowed to work for the PPD on a per diem basis, as was standard policy and practice for retirees. SAC ¶ 69. Plaintiff also contends that the City and Chief Addington failed to remove the allegations of sexual harassment from his IA file in violation of departmental custom and practice. *Id.* ¶¶ 70-72.

Plaintiff contends that he has exhausted all available administrative remedies. *Id.* ¶ 13. On March 21, 2016, he filed a claim for damages with the City pursuant to the California Government Claims Act. *Id.* ¶ 9; *see also* Dkt. No. 32-1, Exs. A-1, A-2. On April 22, 2016, the City denied his claim as untimely. SAC ¶ 10; *see also* Dkt. No. 32-1, Ex. B. On May 2, 2016, plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH"). SAC ¶ 11; *see also* Dkt. No. 32-1, Ex. D. On May 18, 2016, he received three letters from the DFEH, including a document titled "Notice of Case Closure and Right to Sue." SAC ¶ 12; *see also* Dkt. No. 32-1, Exs. E-1, E-2, E-3.

Plaintiff filed this lawsuit against the City and Chief Addington (collectively "defendants") on September 26, 2016. On December 9, 2016, defendants filed a motion to dismiss. Dkt. No. 8. On December 21, 2016, plaintiff filed a first amended complaint, Dkt. No. 10, and a corrected first amended complaint. Dkt. No. 11. Defendants filed a new motion to dismiss with respect to the first amended complaint on January 4, 2017. Dkt. No. 20.

In an order filed February 23, 2017, the Court granted in part and denied in part defendants' motion. As relevant here, the Court held that plaintiff had alleged sufficient facts to

5

state a First Amendment retaliation claim under 42 U.S.C. § 1983 with respect to his October 2015 testimony in court. The Court found that plaintiff had alleged that he engaged in protected activity by testifying in court about defendants' failure to disclose the existence and contents of the internal affairs investigation against Officers Ingram and Sibbitt, and that plaintiff alleged that defendants took several adverse actions against him by terminating negotiations to extend plaintiff's employment with the City, refusing to provide plaintiff with per diem employment following his retirement, falsely reporting that plaintiff's reason for separation was dismissal, as opposed to retirement, and failing to purge plaintiff's internal affairs file of the prior sexual harassment allegations in violation of standard policy and practice.

However, the Court held that to the extent that plaintiff's First Amendment retaliation claim was based on alleged adverse employment actions that occurred before October 2012, such as defendants' investigation of the sexual harassment complaint and execution of the Agreement, those claims are no longer actionable due to the statute of limitations. To the extent that plaintiff's § 1983 retaliation claim was based on other actions that defendants took prior to plaintiff's resignation in January 2016, such as excluding plaintiff from meetings and departmental photographs, the Court dismissed the claim with leave to amend because the FAC did not specify how these acts were retaliatory and when these acts occurred.

The Court engaged in a similar analysis with regard to plaintiff's claims for statutory retaliation under Labor Code § 1102.5 and Government Code § 12940 *et seq*. The Court held that plaintiff had stated a claim to the extent plaintiff claimed that defendants retaliated against him after his October 2015 testimony in court, and granted leave to amend to allege additional instances of retaliation provided plaintiff could allege facts to support a claim. The Court also instructed plaintiff to allege when the retaliation occurred as well as compliance with the Government Claims Act (for claims under § 1102.5) and administrative exhaustion (for claims under § 12940).

With respect to plaintiff's claim for breach of the implied covenant of good faith and fair dealing, the Court dismissed that claim without leave to amend to the extent it was based on conduct that occurred before the 2012 Agreement. As to the remainder of plaintiff's claim, the

1 Court found that plaintiff had not alleged how defendants' alleged conduct in "creating and
2 sustaining a hostile work environment" and "taking adverse employment actions against Plaintiff"
3 breached the covenant of good faith and fair dealing. Plaintiff was granted leave to amend to
4 elaborate on those allegations, and also to allege a claim for breach of contract if plaintiff wished.

On March 9, 2017, plaintiff filed the SAC against the City of Pittsburg and Does 1-10. Plaintiff asserts five causes of action against the City in his SAC: (1) violation of federal civil rights under 42 U.S.C. § 1983; (2) retaliation in violation of California Labor Code § 1102.5; (3) retaliation in violation of California Government Code § 12940 *et seq.*; (4) breach of contract; and (5) breach of the covenant of good faith and fair dealing.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

7

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

# DISCUSSION

## I. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's fourth and fifth causes of action are for breach of contract and breach of the covenant of good faith and fair dealing. The breach of contract claim alleges,

> 137. As part of the 2012 agreement, defendants agreed that it would not demote plaintiff (para. 5), and that no further discipline would be considered or taken against plaintiff (para. 8). The agreement also left open the possibility for future promotion and other forms of employment, inasmuch as the agreement did not require, or seek plaintiff's agreement, to forgo any future promotions or employment.

SAC ¶ 137. Plaintiff claims that defendants breached the 2012 Agreement, and breached the implied covenant of good faith and fair dealing, by (1) in 2014, designating him as "unqualified" for promotion to captain based on the prior sexual harassment allegations, (2) retaliating against him after his October 2015 court testimony by, *inter alia*, cutting off employment negotiations and not setting aside the prior negative IA finding, and (3) subjecting plaintiff to a hostile work environment in retaliation for plaintiff's whistleblowing activity. *Id.* ¶¶ 53, 60-75, 96, 100-103 The alleged hostile work environment includes all of the actions alleged in paragraphs 1-74 of the SAC, as well as, *inter alia*, being excluded from Department photographs "so as to lessen his recognition," being excluded from areas of employment, being given a gag order,[3] offensive stickers being put on his door and desk, not being allowed to work per diem after retirement, a pattern of ongoing threats of being fired, being left out of command staff meetings, and being assigned internal affairs investigations which defendants knew would make plaintiff a target for complaints by disgruntled employees, being excluded from City Council meetings attended by the rest of command staff, being called a pariah, and being mocked by his Captain, "all of which

---

[3] The SAC does not explain how plaintiff was "given a gag order."

8

contributed to plaintiff's being passed up for promotion to Captain, and which lessened his chances of promotion and continued employment with the DEPARTMENT." SAC ¶ 75.

Defendant argues that plaintiff has failed to state a claim because the revised allegations do not allege a breach of any terms of the 2012 Agreement. Defendant notes that under the 2012 Agreement: (1) the City agreed it would "not terminate or demote" plaintiff "for the sustained findings" of the City's sexual harassment investigation or further discipline plaintiff "in response to the allegations set forth in the investigation"; (2) plaintiff could be subject to future discipline or adverse employment actions "subject to the same terms and conditions as other employees"; and (3) for the remainder of his employment, plaintiff could only perform "Lieutenant level duties of an administrative nature" and "such administrative tasks as assigned by the Chief of Police or designee" and would not supervise a "bureau or division" or perform "watch commander duties[.]" Dkt. No. 32-1 (Agreement §§ 4, 5, 5(b), 6-7, 8). Defendant contends that the 2012 Agreement only protected plaintiff from potential discipline, demotion, or termination as a result of the 2012 sexual harassment investigation results, while plaintiff alleges in the SAC that the City took "adverse actions against plaintiff after plaintiff's signing of the 2012 agreement [that] were designed to discourage, suppress, and punish plaintiff's whistle blowing activities." SAC ¶ 75. Defendant argues that because the 2012 Agreement did not address in any way plaintiff's whistleblowing activities, the City could not have breached the Agreement through alleged retaliation for those activities. In addition, defendant argues that the City could not have breached the 2012 agreement by disqualifying plaintiff for the promotion to captain in 2014 because plaintiff expressly accepted "the discipline" of having his job responsibilities limited to the performance of "Lieutenant level duties of an administrative nature" with no supervisory responsibilities "until the effective date of [plaintiff's] resignation" in January 2016. Dkt. No. 32-1 (Agreement § 5(b)).

The Court concludes that plaintiff has failed to state a claim for either breach of contract or breach of the implied covenant of good faith and fair dealing. The alleged breaches involve instances of alleged retaliation for plaintiff's whistleblowing, and do not allege any violations of the express or implied terms of the 2012 Agreement. Although plaintiff's opposition attempts to

9

characterize all of the alleged breaches as "discipline" or forms of *de facto* "demotion," the 2012 Agreement addressed the sexual harassment allegations against plaintiff and not any of his whistleblowing activities. As such, plaintiff has failed to allege a breach of paragraphs 5 or 8 of the 2012 Agreement. Further, the Court agrees with defendant that plaintiff cannot state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing regarding the 2014 promotion in light of the provision in the 2012 Agreement stating that plaintiff agreed to perform "Lieutenant level duties of an administrative nature" with no supervisory responsibilities "until the effective date of [plaintiff's] resignation" in January 2016. Dkt. No. 32-1 (Agreement § 5(b)). *See Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011) (requiring a plaintiff to prove "existence of a contract" and "defendant's breach" to establish a breach of contract action); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) ("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.") (emphasis in original); *see also Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988) ("The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes.").

Accordingly, the Court GRANTS defendant's motion to dismiss without leave to amend. Plaintiff has been provided several opportunities to amend the complaint, and thus the Court finds that further leave to amend would be futile.[4]

///

///

---

[4] Because the Court concludes that plaintiff has failed to state a claim, the Court finds it unnecessary to address defendant's additional arguments in favor of dismissal of these claims.

10

## II.    Retaliation Claims[5]

The SAC alleges claims for retaliation under 42 U.S.C. § 1983 (First Amendment Retaliation), California Labor Code § 1102.5, and California Government Code § 12940. The Court previously held that plaintiff stated a claim for retaliation based on his allegations that he engaged in protected activity by testifying in court in October 2015 and defendant took various adverse actions against him after his testimony, including cutting off employment negotiations, refusing to remove the negative IA finding, and not allowing plaintiff to work on a per diem basis after his January 2016 resignation.

Defendant has moved to dismiss any alleged retaliatory actions occurring before October 2015 as not being timely or actionable as retaliation. Defendant argues that the SAC fails to comply with the Court's instruction in the February 23, 2017 order to allege how any other alleged adverse actions were retaliatory and to allege when those acts occurred. In response, plaintiff asserts that defendant has interpreted the Court's prior order too narrowly, and plaintiff argues that he has stated a claim for retaliation based on *all* of the adverse actions that occurred after his October 2015 testimony. While it is unclear to the Court whether plaintiff has accurately stated defendant's position, the Court concludes that plaintiff has stated a claim for retaliation under § 1983 and California law based upon the October 2015 court testimony and all of the alleged adverse actions that occurred after that testimony.

Plaintiff's opposition generally focuses on alleged retaliation after the October 2015 testimony. Opp'n at 9-10 (Dkt. No. 34). However, plaintiff also appears to argue that the creation of and maintenance of a hostile work environment prior to October 2015 is actionable as retaliation. *Id*. However, as defendant notes, the SAC does not allege when the hostile work environment was created, nor does the SAC connect those allegations to specific protected activity. Instead, the SAC generally alleges that plaintiff was subjected to a pattern of harassment

---

[5]    The caption of the complaint states that plaintiff's § 1983 claim is based on First Amendment retaliation, while the body of the SAC also includes allegations regarding a deprivation of due process. Defendant has moved to dismiss the due process cause of action for failure to state a claim, and plaintiff's opposition does not address this claim. Accordingly, the Court finds that plaintiff has abandoned a due process claim and GRANTS defendant's motion to dismiss this claim without leave to amend.

11

after he signed the 2012 Agreement "designed to discourage, suppress, and punish plaintiff's whistle blowing activities." SAC ¶ 75. The Court previously provided guidance to plaintiff regarding the applicable statutes of limitation for the retaliation claims, as well as the need to allege a causal connection between protected activity and alleged retaliation in order to state a claim. Because the October 2015 court appearance is the only specific protected activity alleged in the SAC that falls within the various statutes of limitations, the Court finds that plaintiff has not stated a claim for retaliation prior to that court appearance.[6]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss certain claims in the plaintiff's SAC is GRANTED without leave to amend.

**IT IS SO ORDERED**.

Dated: April 24, 2017

SUSAN ILLSTON
United States District Judge

---

[6] Aside from the general allegations regarding a hostile work environment, it appears that the only other pre-October 2015 alleged retaliation concerns the disqualification for promotion in "late 2014." SAC ¶ 122. However, the SAC alleges that plaintiff was disqualified because of the prior sexual harassment allegations, and as discussed *supra*, the 2012 Agreement provided that plaintiff agreed to accept the discipline of working at a Lieutenant level with no supervisory responsibilities for the remainder of his employment. As such, the SAC has failed to allege facts showing that the 2014 disqualification was retaliation for any protected activity.