DANIEL A. HOROWITZ  SBN 92400
P.O. Box 1547
Lafayette, CA 94549
(925) 283-1863
Email: bdega@earthlink.net

CARMELA CARAMAGNO    SBN 139279
P.O. Box 1811
Lafayette, CA 94549
(925) 299-1904
Email: caramagnolaw@comcast.net

Attorney for plaintiff
WADE DERBY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WADE DERBY, an individual, | **No. 16-cv-05469-SI** |
| Plaintiff, | **DECLARATION OF WADE DERBY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| v. | **[Fed. R. Civ. Proc. 56]** |
| CITY OF PITTSBURG; and DOES 1-10, inclusive, | [Filed concurrently with [Proposed] Order] |
| Defendants. | Judge: The Hon. Susan Illston<br>Dept.: Ctrm 1 - 17th Fl<br>Date: July 6, 2018<br>Time: 10:00 a.m. |
| _____/ | |

**DECLARATION OF WADE DERBY**

I, Wade Derby state of my personal knowledge as follows:

1. My negotiation to continue employment past the January 8, 2016 state in the agreement with the City, was a long standing negotiation.

2. At the time the severance agreement was first discussed, Chief Addington and I had

1

Case No. 3:16-cv-05469-SI
DECLARATION OF WADE DERBY IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

multiple discussions regarding keeping me past the nominal termination date on the document. I testified to this at my deposition quoting now Chief Addington as saying "'I will get you there no matter what, no matter how much your records -- or your own time doesn't show that you can get there, I'm going to get you to that date." (Exhibit 6, Derby Deposition 177:4-8)

3. I also accurately testified at my deposition that stated that "he personally, no matter what, would see to it that I make it to that end date." (Exhibit 6, Deposition of Wade Derby 174:16-22)

4. Over many years I had a mixed relationship with Brian Addington.

5. I respected him professionally. I was outspoken in my opposition to the prior Chief's conduct with respect to a deceptive policy of filing real crimes as "Suspicious Circumstance(s)" (hence artificially reducing the City's crime rate. Brian Addington and the Lt. he mentored, (Ron Raman), were more political and less outspoken on this issue.

6. For these reasons, I knew that it would be difficult for me to make Chief when Chief Baker resigned as I would have exposed the wrongdoing and Brian Addington while somewhat correcting the wrong, did not actively expose it when he (Addington) became Chief.

7. When Officer Wilkerson made her accusations, she also accused Ron Raman of similar conduct. A formal IA was instituted as to me but a simple memo clearing Raman was prepared by Addington, with no IA being conducted on Raman by his own admission. The accusations against Raman included analogizing a large computer screen to his private part, getting physically too close to Officer Wilkerson while she viewed child pornography as part of an investigation and using his authority to obtain her personal cell phone number.

8. On July 2, 2013, Brian Addington had become Chief and Officer Wilkerson had sued the department, Chief Addington, Lt. Raman and me. As shown by Exhibit 3, through their attorneys, Jackson Lewis, the offered to enter into a joint defense with me. I took that to mean that they gave credence to my assertions that the original claims against me by Ms. Wilkerson were unfounded.

9. Throughout his time as Chief, Brian Addington gave me the complex and highly

DECLARATION OF WADE DERBY IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

contentious work of conducting Internal Affairs investigations. At the same time he made life very difficult for me in the department.

10. I conducted the investigation of officers Sibbitt and Ingram and I was personally aware that a criminal investigation had been conducted as well. I interviewed people who were alleging wrongdoing by the officers and I was prepared to write my formal conclusions.

11. Suddenly, the investigation was terminated. The officers left the department and the criminal investigation file number was purged from our system.

12. There were still numerous active cases involving these officers.

13. There were cases that had pled or had led to convictions after trial as well.

14. Joyce Lowe was a civilian employee charged with bringing files to Pitchess motions.

15. I began to notice that when Sibbitt and Ingram were the subject of a Pitchess motion that the files she brought did not include my work or the now purged criminal case.

16. I was well aware of case law that did not allow the department to pick and choose what materials were presented. The entire set of files and investigations had to be shown to a judge and it was the judge who decided what was or was not relevant.

17. On February 27, 2015 I sent a letter to Chief Addington which detailed my concerns about my treatment in the department. This is Exhibit 4 to this declaration. I have handwritten the date because my copy is on "WORD" and it automatically inserted the date that I printed the document. In that letter at page 3 I state that the "incomplete" Pitchess process with respect to Sibbitt and Ingram was an ethics issue.

18. On March 3, 2015 I sent a memo describing my concerns that twice in 2014, the Sibbitt/Ingram investigation that I conducted had not been disclosed during an in camera Pitchess review.

19. The problem with Pitchess withholding continued. On May 4, 2015, I wrote yet another memo on this topic. In that letter (Exhibit 5) I take a strong stance and sate that "...we must not allow this matter to remain undisclosed." I also stated that "I believe we will bear possible criminal culpability for violating State and/or Federal laws...".

Case No. 3:16-cv-05469-SI
DECLARATION OF WADE DERBY IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

20. This is the context in which my negotiations for continued employment are framed in this declaration. I was directly threatening to come forward to the judge and I was informing the Chief that in my opinion he may have committed a crime.

21. The battleground hearing was the one on October 16, 2015 before Judge Lewis Davis. The public defender had focused on whether materials were withheld and I had made certain that unlike the other hearings, Joyce Lowe would not be alone. I was going to be present.

22. This was when Chief Addington offered me a deal. His offer was to extend my time beyond January 6, 2017. However, the agreement did not guarantee this. It was 100% in the discretion of Chief Addington.

23. Once I signed this amendment to the original agreement, I was giving up all of my rights to contest the original agreement, my post discipline treatment or any whistle blowing lawsuits.

24. In other words, it was a bribe. If I shut up on October 16, 2015 the Chief would watch out for me. I would also have to shut up in the future.

25. I would never suppress evidence for personal gain. I declined to sign and stated that I would only sign an agreement that had an actual guarantee of continued employment.

26. Chief Addington said "no". It was clear that without the control over my conduct on October 16 and thereafter, he had no interest in negotiating.

27. I appeared at the hearing and I told the truth. Judge Davis released materials that later was used to exonerate over 15 people.

28. I understand that the court must consider whether it is credible that the offer was in fact a "bribe" for silence. I can add an additional fact. On October 12, 2015 I sent another memorandum asking the Chief to reconsider. Normally, he would respond to my memos quickly. This memo was not responded to until October 19, 2015. The Pitchess hearing was held on Friday, October 16 and his memo was sent the next Monday. That response is attached as Exhibit 6.

29. In that memo the Chief pretends that "I am unaware of you making any

4

Case No. 3:16-cv-05469-SI
DECLARATION OF WADE DERBY IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

'whistleblowing' complaints. He then says that "If you have such a compliant (sic), please let me know." I had sent him many memos about this issue, including my May 4, 2015 memo where I stated that we were likely committing crimes by withholding evidence. I know this memo had gotten Addington's attention as we discussed his belief that he could withhold the material prior to my testimony to Judge Davis on October 16, 2015.

30. The documents attached to this declaration were prepared from my personal files and/or computer and they are genuine and unaltered.

31. The damages from this retaliation were very significant.

32. My commute to work is now almost two and a half hours longer each day.

33. I was extraordinarily stressed my inability to obtain another job.

34. My estimates of my losses economically were submitted as part of our initial disclosures. That calculation will be confirmed by an expert but the facts to that date were that my compensation for 2016 at Sacramento County was $69,700 before taxes and deductions; working full time.

35. This is significantly less than Lt. or Captain's pay at Pittsburg PD both in terms of wages and retirement benefits.

36. As I understand the system, at Pittsburg, a Captain's Salary with incentives x 4 years would have paid me $896.825.60. I believe that without the retaliation my IA findings would have been set aside and/or my IA file purged, and, by Addington's own admission, I would have been promoted to Captain.

37. Based on my experience in the Pittsburg Police Department, I believe the Lieutenant's salary with incentives x 4 years=$657,696.00. This is significantly higher than what I am currently making in my position in Sacramento.

38. A Captain's per diem cycle at retirement in Pittsburg for 2 fiscal cycles= $219,129.60

39. The difference between the annual Captain's Salary and Lieutenant's salary with the maximum 22.5% incentives by contract = $26,185.76

40. Using that annual pay difference between ranks and calculating the 26.4 year

5

Case No. 3:16-cv-05469-SI
DECLARATION OF WADE DERBY IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

longevity after retirement @ 50 = $696,304.06.

41. Obviously an expert will work with the numbers in a more comprehensive manner, but my damages are significant.

I declare the above to be true and correct under penalty of perjury. Executed this 7th day of June 8, 2018, at Lafayette, California.

                                                       _WJD_
                                       WADE DERBY, Plaintiff